**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

DAVID CRESPO, ANTHONY PODIAS, PEDRO
ESPADA, JR., ROLFI ESPINAL, KESNEL JUSTE
and ANTHONY JOSEPH on their own behalf, and
on behalf of two classes of similarly situated
prisoners,

                    Plaintiffs,                      **17-CV-06329 (RRM)(PK) (E.D.N.Y.)**

          v.

HUGH HURWITZ, Acting Director, Federal Bureau
of Prisons; MICHAEL CARVAJAL, Northeast
Regional Director, Federal Bureau of Prisons;
HERMAN QUAY III, Warden, MDC Brooklyn;
KIMBERLY ASK-CARLSON, former Warden,
MDC Brooklyn; GERARD TRAVERS, Health
Services Administrator, MDC Brooklyn; WAYNE
DECKER, former Food Service Administrator,
MDC Brooklyn; MARY LOU COMER, Food
Service Administrator, MDC Brooklyn.

                    Defendants.

**MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

LEGAL STANDARDS ......................................................................................3

I.  STANDARD OF REVIEW FOR MOTIONS TO DISMISS ..............................................3

II.  STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS.......................4

ARGUMENT ...................................................................................................4

I.  SOVEREIGN IMMUNITY DOES NOT BAR INJUNCTIVE RELIEF CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY ......................................4

II.  DEFENDANTS CANNOT MEET THEIR VERY HIGH BURDEN ON THE MERITS-BASED AFFIRMATIVE DEFENSE OF QUALIFIED IMMUNITY...............6

    A.  Qualified Immunity, as an Affirmative Defense, is Not Grounds for Dismissal........................................................................................6

    B.  Defendants Cannot Meet Their High Burden for Showing Qualified Immunity.......................................................................................7

        1.  Plaintiffs Properly Pled the Objective Requirement for "Sufficiently Serious" Conditions of Inadequate Medical Care .................8

        2.  Plaintiffs Properly Pled the Objective Requirement for "Sufficiently Serious" Deficiencies in Living Conditions and Food........10

        3.  Plaintiffs Properly Pled the Subjective Requirement for Showing Defendants' "Deliberate Indifference" to the Challenged Conditions.............................................................................12

III.  PLAINTIFFS' BIVENS CLAIMS ARE NOT NOVEL AND NO SPECIAL FACTORS OR ALTERNATIVE REMEDY COUNSELS AGAINST THEM...............16

    A.  Plaintiffs' Medical Care Claims Do Not Arise In A New *Bivens* Context And Fall Squarely Under Existing Supreme Court Precedent..............................17

    B.  Plaintiffs' Living Conditions and Food Allegations Also Do Not Arise in a New *Bivens* Context And Also Fall Within Binding Precedent ..........................20

    C.  Plaintiffs' *Bivens* Claims Also Survive Under A Special Factor Analysis And There Is No Adequate Alternative Remedy To *Bivens* Damages.................21

IV.  PLAINTIFFS JUSTE AND ESPINAL DID NOT HAVE TO EXHAUST THEIR ADMINISTRATIVE REMEDIES, THOUGH THEY DID SO VICARIOUSLY. ..........24

CONCLUSION................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abernathy v. Strada*,
    2015 WL 997980 (E.D.N.Y. 2015)...................................................................15

*Adekoya v. Holder*,
    751 F. Supp. 2d 688 (S.D.N.Y. 2010).............................................................15

*Adeleke v. United States*,
    355 F.3d 144 (2d Cir. 2004)..............................................................................5

*Aegis Ins. Services, Inc. v. 7 World Trade Co., L.P.*,
    737 F.3d 166 (2d Cir. 2013)..............................................................................3

*Amador v. Andrews*,
    655 F.3d 89 (2d Cir. 2011)................................................................................6

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010)..............................................................................3

*Ashcroft v. Al-Kidd*
    563 U.S. 731 (2011)...........................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................3, 12, 13

*Barnes v. Briley*,
    420 F.3d 673 (7th Cir. 2005) ..........................................................................25

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................1, 3

*Bellamy v. Mount Vernon Hosp.*,
    2009 WL 1835939 (S.D.N.Y. 2009).........................................................13, 15

*Berkun v. Terrell*,
    2012 WL 3233897 (E.D.N.Y. Aug. 6, 2012)....................................................5

*Berry v. Kerik*,
    366 F.3d 85 (2d Cir. 2004)..............................................................................25

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
    403 U.S. 388 (1971) ................................................................................ *passim*

*Brown v. McElroy*,
    160 F. Supp. 2d 699 (S.D.N.Y. 2001)................................................................11

*Butler v. Suffolk Cnty.*,
    289 F.R.D. 80 (E.D.N.Y. 2013)...............................................................6, 25

*Carlson v. Green*,
    446 U.S. 14 (1980)................................................................... *passim*

*Carlucci v. Chapa*,
    884 F.3d 534 (5th Cir. 2018) .............................................................20

*Carson v. Lewis*,
    35 F. Supp. 2d 250 (E.D.N.Y. 1999) ...................................................15

*Castro v. U.S.*,
    94 F.3d 105 (2d Cir. 1994).................................................................6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).........................................................................4

*Chance v. Armstrong*,
    143 F.3d 698 (2d Cir. 1998)............................................................8, 9

*Chen Chao v. Holder*,
    2011 WL 6837761 (E.D.N.Y. Dec. 29, 2011) ......................................5

*Colon v. Howard*,
    215 F.3d 227 (2d Cir. 2000)..........................................................11, 13

*Corr. Servs. Corp. v. Malesko*,
    534 U.S. 61 (2001)..........................................................................22

*Cuevas v. United States*,
    2018 WL 1399910 (D. Colo. Mar. 19, 2018) ....................................19

*Dotson v. Griesa*,
    398 F.3d 156 (2d Cir. 2005)..............................................................5

*Edrei v. Maguire*,
    892 F.3d 525 (2d Cir. 2018)..............................................................7

*Estelle v. Gamble*,
    429 U.S. 97 (1976).......................................................................8, 18

*Farmer v. Brennan*,
    511 U.S. 825 (1994).................................................................. *passim*

*Garmhausen v. Holder,*
   757 F. Supp. 2d 123 (E.D.N.Y 2010) ....................................................5

*Gaston v. Coughlin,*
   249 F.3d 156 (2d Cir. 2001) ..............................................................10

*Gay v. Terrell,*
   2013 WL 5437045 (E.D.N.Y. Sept. 27, 2013) ......................................5

*Goris v. Breslin,*
   2006 WL 1313823 (E.D.N.Y. May 12, 2006) ....................................15

*Gray v. Metropolitan Detention Ctr.,*
   2011 WL 2847430 (E.D.N.Y. 2011) ..................................................13

*Greenwaldt v. Coughlin,*
   1995 WL 232736 (S.D.N.Y. 1995) ....................................................15

*Greig v. Goord,*
   169 F.3d 165 (2d Cir. 1999) ..........................................................23, 24

*Grullon v. City of New Haven,*
   729 F.3d 133 (2d Cir. 2013) ..........................................................14, 16

*Harlow v. Fitzgerald*
   457 U.S. 800 (1982) ..........................................................................7

*Helling v. McKinney,*
   509 U.S. 25 (1993) ............................................................................5

*Hester-Bey v. Ford,*
   2015 WL 4910570 (E.D.N.Y. June 8, 2015) ....................................3, 4

*Heublein, Inc. v. United States,*
   996 F.2d 1455 (2d Cir. 1993) ............................................................4

*Jackson v. Dist. of Columbia,*
   254 F.3d 262 (D.C. Cir. 2001) ..........................................................25

*Jackson v. Fong,*
   870 F.3d 928 (9th Cir. 2017) ............................................................24

*Johnson v. New York,*
   2012 WL 5424515 (E.D.N.Y. 2012) ..................................................13

*Jones v. Goord,*
   432 F. Supp. 2d 221 (S.D.N.Y 2006) ............................................7, 11

*Kaluckzy v. City of White Plains*
    57 F.3d 202 (2d. Cir. 1995)...................................................................7

*Kisela v. Hughes*
    138 S. Ct. 1148 (2018).......................................................................7

*Laurent v. Borecky*,
    2018 WL 2973386 (E.D.N.Y. June 12, 2018) ......................................20

*Lennon v. Miller*,
    66 F.3d 416 (2d Cir. 1995)..................................................................7

*Lindsey v. Butler*,
    43 Supp. 3d 317 (S.D.N.Y. 2014) .......................................................15

*Linlor v. Polson*,
    263 F. Supp. 3d 613 (E.D. Va. 2017) .................................................22

*Lipscomb v. Hufford*,
    2017 WL 3267732 (S.D.N.Y. July 28, 2017) ......................................22

*Major League Baseball Properties, Inc. v. Salvino, Inc.*,
    542 F.3d 290 (2d Cir. 2008)................................................................4

*McKnight v. Civiletti*,
    553 F. Supp. 904 (E.D. Pa. 1982) ....................................................5, 6

*Minneci v. Pollard*,
    565 U.S. 118 (2012)......................................................................19, 22

*In re Nassau Cnty. Strip Search Cases*,
    2010 WL 3781563 (E.D.N.Y. Sept. 22, 2010) ....................................25

*Ojo v. United States*,
    2018 WL 3863441 (E.D.N.Y. Aug. 14, 2018)......................................24

*Pearson v. Callahan*
    555 U.S. 223 (2009)...........................................................................7

*Phelps v. Kapnolas*,
    308 F.3d 180 (2d Cir. 2002).................................................10, 15, 16

*Raila v. United States*,
    355 F.3d 118 (2d Cir. 2004).................................................................4

*Reid v. Nassau Cnty. Sheriff's Dep't*,
    2014 WL 4185195 (E.D.N.Y. Aug. 20, 2014).................................. *passim*

*Reynolds v. Barrett*,
    685 F.3d 193 (2d Cir. 2012) ................................................................... 13

*Rhodes v. Chapman*,
    452 U.S. 337 (1981) .......................................................................... 7, 11

*Robinson v. Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994) ..................................................................... 5

*Robles v. Coughlin*,
    725 F.2d 12 (2d Cir. 1983) ................................................................... 10

*Runkle v. Office of Coroner*,
    1985 WL 3820 (S.D.N.Y. Nov. 19, 1985) ............................................... 5

*Salahuddin v. Goord*,
    467 F.3d 263 (2d Cir. 2006) ................................................................ 6, 8

*Sealey v. Giltner*,
    197 F.3d 578 (2d Cir. 1999) ................................................................. 11

*Smart v. Goord*,
    441 F. Supp. 2d 631 (S.D.N.Y 2006) ..................................................... 15

*Smith v. Carpenter*,
    316 F.3d 178 (2d Cir. 2003) ................................................................... 9

*Smith v. Lehman*,
    689 F.2d 342 (2d Cir. 1982) ................................................................... 5

*Turkmen v. Ashcroft*,
    2018 WL 4026734 (E.D.N.Y. Aug. 13, 2018) ....................................... 22

*Turkmen v. Hasty*,
    789 F.3d 218 (2d Cir. 2015) ................................................................. 13

*Tyler v Dunne*,
    2016 WL 4186971 (E.D.N.Y. 2016) ..................................................... 15

*United States v. Mitchell*,
    463 U.S. 206 (1983) ............................................................................... 5

*United States v. Real Prop. & Premises Located at 249-20 Cambria Ave., Little
    Neck, New York 11362*,
    21 F. Supp. 3d 247 (E.D.N.Y. 2014) ...................................................... 4

*Vanderklok v. United States*,
    868 F.3d 189 (3d Cir. 2017) ................................................................. 22

*Walker v. Schult*,
  717 F.3d 119 (2d Cir. 2013).................................................................*passim*

*Williams v. United States*,
  2010 WL 963474 (S.D.N.Y. Feb. 25, 2010)..........................................5

*Wilson v. Setter*,
  501 U.S. 294 (1991)............................................................................11

*Wingate v. Horn*,
  2007 WL 30100 (S.D.N.Y. 2007).......................................................15

*Zielinski v. DeFreest*,
  2013 WL 4838833 (S.D.N.Y Sept. 10, 2013).........................................5

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2016)........................................................................*passim*

**Statutes**

28 U.S.C. PT. VI, Ch. 153........................................................................21

28 U.S.C. § 1331.......................................................................................6

28 U.S.C. § 2679(b)(2)(A).......................................................................22

42 U.S.C. § 1997e................................................................................23, 24

Federal Tort Claims Act.....................................................................21, 22

Prison Litigation Reform Act..................................................................24

**Other Authorities**

Eighth Amendment ..............................................................................*passim*

Rule 8(a)(2)...........................................................................................16

Rule 12(b)(1).......................................................................................3, 4

Rule 12(b)(6)...................................................................................2, 3, 4

Rule 56....................................................................................................4

## PRELIMINARY STATEMENT

The complaint sets out a well-pled and harrowing account of the constitutionally deficient medical care, living conditions and food for male cadre at MDC Brooklyn [ECF No. 34].

Plaintiffs are five former and one current cadre, suing on behalf of themselves and two similarly-situated classes.  They allege they were not provided with any access to sunlight or fresh air for months (or even years), during which time they breathed only the poorly-ventilated recycled air.  They have to eat spoiled food.  They have to sleep, bathe, and live in spaces that are contaminated by feces, urine, mold, asbestos, and vermin.  Their serious medical needs are poorly treated—when they are not ignored.  The consequences of these inhumane conditions is sickness and suffering.  At least one class member has died under these conditions.

Plaintiffs also make non-conclusory allegations that Defendants, who have supervisory authority, were made aware of all this.  Many of the conditions are in plain sight.  Plaintiffs and other class members made many complaints to Defendants, including through the administrative remedies procedures and at regular cadre-supervisor meetings.  Media coverage and public reports documented similar conditions with common causes.  Defendants disregarded it all.

For the pleading stage, Plaintiffs have easily met their burden.  Plaintiffs have made plausible factual allegations to put Defendants on fair notice that Plaintiffs are suing for Eighth Amendment violations and seeking injunctive relief and damages to remedy the resulting harm. Nothing else is required at the pleading stage, and the complaint passes muster under the most straightforward application of the well-settled standards governing a motion to dismiss.  Despite Defendants' suggestions, no heightened pleading standard applies under *Twombly*.  Defendants also try to take single phrases in the pleadings out of context and even to rewrite the allegations themselves—like the rhetorical jiu-jitsu to reframe them as "inconsistent medical treatment" and "uncomfortable conditions" that are "part and parcel of the ordinary workings of federal

prisons." This is improper. Plaintiffs' plausible non-conclusory allegations must be accepted as true, viewed as a whole, and in the light most favorable to *Plaintiffs*, not Defendants.

Defendants' arguments also are misplaced based on Supreme Court and Second Circuit precedent embracing Plaintiffs' claims. Defendants' attack on the complaint is premised on a radical view of the controlling law that amounts to an unprecedented evisceration of any prisoner condition cases that are "not medical in nature" or have not "caused death to the Plaintiffs."

*First*, Defendants are wrong as a matter of law that sovereign immunity precludes Plaintiffs from seeking injunctive relief. Binding authority overwhelmingly holds that Defendants are not immune from injunctive claims in their *official* capacities (as alleged here). Defendants' *sole* decision suggesting otherwise is a stale district court ruling from outside the Second Circuit—which has never been cited or relied upon in it—that contradicts Supreme Court and Second Circuit holdings that allow injunctive relief here.

*Second*, the complaint should not be dismissed based on Defendants' affirmative defense of qualified immunity. Plaintiffs have no obligation to plead around a merits-based *defense* that courts consider based on a full evidentiary record at summary judgment or trial. Defendants do not cite a single analogous case granting a Rule 12(b)(6) dismissal on this basis, while strong authority exists to show that Plaintiffs have pled cognizable Eighth Amendment violations.

*Third*, the *Bivens* damages claims cannot be dismissed based on *Abbasi*. The Supreme Court expressly distinguished that case—brought under the Fifth Amendment by unlawfully present aliens held as pretrial detainees following the 9/11 attacks—from its previous decision holding that Eighth Amendment *Bivens* claims can be brought for "failure to provide medical care." The same reasoning authorizes a *Bivens* remedy here. As for the living conditions and food claims, there is no support in the case law for Defendants' proffered *per se* ban on non-

medical *Bivens* claims, which have been acknowledged by the Supreme Court and Second Circuit, and which survive *Abassi* for the same reasons that the medical claims do.

*Fourth*, Plaintiffs Espinal and Juste cannot be dismissed on summary judgment because Defendants' own fact declaration shows they were released from custody before filing their operative (amended) complaint, which is what controls under the PLRA's exhaustion requirements. And regardless, as class members, they have both "vicariously" exhausted their remedies through the unchallenged efforts of another class member, Plaintiff Crespo.

Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety.

## **LEGAL STANDARDS**

## I.    **STANDARD OF REVIEW FOR MOTIONS TO DISMISS**

To survive a Rule 12(b)(6) motion, a plaintiff need only plead sufficient facts "to state a claim to relief that is plausible on its face"; there is no requirement for "heightened fact pleading of specifics." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs are not required to plead "specific evidence or extra facts beyond what is needed to make the claim plausible." *Arista Records*, *LLC v. Doe 3*, 604 F.3d 110, 120–21 (2d Cir. 2010). They need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Reid v. Nassau Cty. Sheriff's Dep't*, 2014 WL 4185195, at *7 (E.D.N.Y. Aug. 20, 2014). Also, it is well settled that courts "construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." *Aegis Ins. Services, Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013).

"The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard except that a plaintiff asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists." *Hester-Bey v. Ford*, 2015 WL 4910570, at *2 (E.D.N.Y. June 8, 2015) (internal quotations omitted); *United States v. Real Prop. & Premises Located at 249-20 Cambria Ave., Little Neck, New York 11362*, 21 F. Supp. 3d 247, 249 (E.D.N.Y. 2014).  Like a 12(b)(6) motion, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004).

## II.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS

Under Rule 56, summary judgment is proper if there is no genuine issue as to any material fact so that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  Summary judgment requires "more than a 'scintilla of evidence'" upon which the fact finder can "reasonably find" in favor of the non-moving party.  *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).  The movant has the burden to demonstrate that there is no genuine issue of material fact, and only then does the burden shift to the non-movant to come forward with specific facts showing that a genuine issue exists.  *See Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).

## <u>ARGUMENT</u>

## I.    SOVEREIGN IMMUNITY DOES NOT BAR INJUNCTIVE RELIEF CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY

Defendants argue sovereign immunity bars the injunctive claims brought against them in their official capacities.  Defs.' Mem. of Law in Support of Defs.' Motion to Dismiss or, in the Alternative, For Partial Summary Judgement ("Br.") at 5.[1]  But this ignores that the Supreme Court clearly established individuals' rights to seek injunctive relief against federal officials in their official capacity for Eighth Amendment violations.  *Farmer v. Brennan*, 511 U.S. 825, 846

---

[1] Defendants do not argue sovereign immunity as to damages claims brought in the individual capacities.

(1994) (vacating dismissal of injunctive relief claims and noting that "[i]f the court finds the Eighth Amendment's [claims] . . . requirements satisfied, it may grant appropriate injunctive relief").[2]  Similarly, the "Second Circuit has expressly held that sovereign immunity does not bar 'claims for prospective equitable relief' against federal officials." *Berkun v. Terrell*, 2012 WL 3233897, at *3 (E.D.N.Y. Aug. 6, 2012) (Gleeson, J.) (citing *Conyers v. Rossides*, 558 F.3d 137, 150 (2d Cir. 2009)).[3]

It is thus "crucial" for courts to distinguish between claims for damages and claims for injunctive relief to determine whether the defense is viable. *Runkle v. Office of Coroner*, 1985 WL 3820, at *3 (S.D.N.Y. Nov. 19, 1985).  Yet the majority of Defendants' cited cases only support the contention that sovereign immunity bars claims for *damages* against federal officials in their official capacities. Br. at 5-6.[4]  Not one of the cited cases from this Circuit support the contention that claims for *injunctive* relief are so barred.[5]  Ultimately, Defendants heavily rely on a single out-of-Circuit *pro se* case from over thirty years ago for the proposition that injunctive

---

[2] *See also Helling v. McKinney*, 509 U.S. 25, 31-33 (1993) (holding that prisoner stated a valid cause of action for injunctive relief: "[t]hat the Eighth Amendment protects against future harm to inmates is not a novel proposition"); *Berkun,* 2012 WL 3233897, at *2 ("The Supreme Court has long sustain[ed] the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution.") (internal citation omitted).

[3] *See also Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005) (holding that claims for prospective equitable relief are not barred by sovereign immunity); *Smith v. Lehman*, 689 F.2d 342, 345 n.7 (2d Cir. 1982) ("sovereign immunity does not apply in cases of alleged constitutional violations even where the sovereign is called upon to take affirmative action"); *Zielinski v. DeFreest*, 2013 WL 4838833, at *15 (S.D.N.Y Sept. 10, 2013) ("Individuals' right to seek injunctive and declaratory relief against state or federal officers in their *official capacities* for alleged constitutional violations is well established") (emphasis added); *Garmhausen v. Holder*, 757 F. Supp. 2d 123, 135 (E.D.N.Y 2010) ("[s]overeign immunity is [] no bar to claims for prospective relief . . . to conform . . . official conduct to a legal mandate").

[4] *United States v. Mitchell*, 463 U.S. 206, 207 (1983) (money damages claims); *Adeleke v. United States*, 355 F.3d 144, 147 (2d Cir. 2004) (same); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (same); *Gay v. Terrell*, 2013 WL 5437045, at *27 (E.D.N.Y. Sept. 27, 2013) (same).  The sole cited case involving injunctive relief claims brought in an official capacity was dismissed on mootness, not sovereign immunity, grounds.  *Chen Chao v. Holder*, 2011 WL 6837761, at *5 (E.D.N.Y. Dec. 29, 2011) (Mauskopf, J.).

[5] The relief sought in a hand-filed *pro se* complaint in *Williams v. United States* is ambiguous, and nowhere does the court hold that claims for injunctive relief against federal officials in their official capacity are barred by sovereign immunity. 2010 WL 963474, at *1 (S.D.N.Y. Feb. 25, 2010) (dismissing *pro se* excessive force, *Bivens* claims).

relief against federal officials in their official capacities is barred by sovereign immunity. Br. at 6 (citing *McKnight v. Civiletti*, 553 F. Supp. 904 (E.D. Pa. 1982)). The Second Circuit has never cited or relied on that case, which does not comport with its or the Supreme Court's precedent.

Plaintiffs do not have to plead "express waiver of sovereign immunity," Br. at 5, where such immunity does not apply in the first place. Accordingly, this Court retains federal question jurisdiction pursuant to 28 U.S.C. § 1331 to determine Plaintiffs' injunctive relief claims.[6]

## II. DEFENDANTS CANNOT MEET THEIR VERY HIGH BURDEN ON THE MERITS-BASED AFFIRMATIVE DEFENSE OF QUALIFIED IMMUNITY

Defendants argue that the complaint should be dismissed because qualified immunity protects them against the alleged Eighth Amendment violations. Br. at § 4. But their argument is premature for the pleadings stage and, in any event, Defendants cannot meet the stringent standard for dismissal of the pleadings based on this affirmative defense.

### A. Qualified Immunity, as an Affirmative Defense, is Not Grounds for Dismissal

Qualified immunity is an affirmative defense and a plaintiff "need not plead facts showing the absence of such a defense." *Castro v. U.S.*, 34 F.3d 106, 111 (2d Cir. 1994). Because the defense raises questions of fact, "it is a defense that often can and should be decided on a motion for summary judgment." *Id.* at 112. *See also Walker v. Schult*, 717 F.3d 119, 130 (2d Cir. 2013) ("qualified immunity is often best decided on a motion for summary judgment when the details of the alleged deprivations are more fully developed"). That is why, Defendants

---

[6] Defendants suggest injunctive claims brought by Plaintiffs released from MDCB "are moot and/or lack standing." Br. at 6 n.2. Defendants' reliance on *Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006), is misplaced as that case only concerned the claims of an individual plaintiff and not on behalf of a class. *See Butler v. Suffolk Cty.*, 289 F.R.D. 80, 91 (E.D.N.Y. 2013). Here, as a representative for the injunctive relief class, Mr. Crespo has and retains standing on behalf of all class members. Am. Compl. at 11, 42. And while the release or transfer of an *individual* prisoner "generally moots" *that* prisoner's *individual* injunctive claims, "in class actions, an individual plaintiff may continue to represent the interests of others even after any prospect of individual recovery has vanished." *Butler*, 289 F.R.D. at 91 (denying dismissal and finding that class representative's claim "related back" to the date of filing of the complaint despite the representative's release from prison) (internal quotations omitted); *see also Amador v. Andrews*, 655 F.3d 89, 101 (2d Cir. 2011) (reversing district court decision to dismiss § 1983 Eighth Amendment injunctive class claims as moot where named plaintiffs had been released after the filing of the amended complaint).

do not cite a single analogous decision dismissing an Eighth Amendment complaint on the pleadings based on qualified immunity, Br. at 15-16,[7] while the Eighth Amendment cases they do cite involve merits rulings made on extensive factual records. *See, e.g.*, Br. at 16 (citing *Jones v. Goord*, 435 F. Supp. 2d 221, 227-28 (S.D.N.Y 2006) (summary judgment ruling on an "elaborate record" following "extensive discovery")) and *Rhodes v. Chapman*, 452 U.S. 337, 340 (1981) (post-trial ruling made "extensive findings of fact"). On this ground alone, their motion to dismiss based on this affirmative defense is premature and the Court should deny it.

### B.    Defendants Cannot Meet Their High Burden for Showing Qualified Immunity

If the Court were to entertain the premature qualified immunity defense on the pleadings, Defendants cannot get over the "formidable hurdle" of a "more stringent standard applicable to this procedural route." *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) ("we accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiffs' favor, including both those that support the claim and 'those that defeat the immunity defense'").

Defendants must show Plaintiffs bring no violations of "clearly established statutory or constitutional rights of which a reasonable person would have known." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832. The claims must meet an "objective" requirement that conditions involve a "sufficiently serious" deprivation of a "minimal civilized measure of life's necessities" posing "substantial risk of serious harm" to inmates. *Id*. at 834. The claims must also meet a "subjective" requirement that

---

[7] Citing *Pearson v. Callahan*, 555 U.S. 223 (2009) (Fourth Amendment search and arrest); *Ashcroft v. Al-Kidd*, 563 U.S. 731 (2011) (Fourth Amendment arrest); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) (unlawful discharge from job); *Kisela v. Hughes*, 138 S. Ct. 1148 (2018) (Fourth Amendment excessive force); *Kaluczky v. City of White Plain*s, 57 F.3d 202 (2d. Cir. 1995) (Fourth and Fourteenth amendment job promotion and harassment).

prison officials had a "sufficiently culpable state of mind." *Id.* at 834, 847 (internal citations omitted).[8]  In trying to argue that Plaintiffs failed both of these requirements, Defendants flip the plaintiff-friendly standard on its head and rewrite the well-pled complaint.

### 1.     Plaintiffs Properly Pled the Objective Requirement for "Sufficiently Serious" Conditions of Inadequate Medical Care

The Supreme Court "has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—'deliberate indifference to serious medical needs.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  This standard "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).  Where a complaint alleges a failure to provide *any* treatment, the focus is on the seriousness of the inmate's medical condition;[9] for a failure to provide *adequate* treatment, the focus is on the challenged delay or interruption in treatment.  *Id.*

The complaint adequately pleads both inadequate medical treatment as well as failures to provide any treatment at all.  It alleges officials "routinely deny Cadre access to necessary medical care," while "[r]equests to obtain medical care are often ignored, sometimes for a period of weeks or months.  Am. Compl. ¶¶ 36-37.  Examinations are "frequently cursory with little follow-up or remedial care" and "[r]eferrals to specialists are insufficient or non-existent." *Id.* ¶ 37.  There is an "utter lack of rehabilitation" care and incidents of officers "forcing, under threat of punishment, medically excused Cadre to work." *Id.* ¶ 36. One doctor is alleged to have been

---

[8] Defendants do not try to argue qualified immunity on whether Defendants reasonably believed they were not violating constitutional rights; they only argue that the alleged rights do not rise to Eighth Amendment violations.

[9] This includes asking whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Id.* (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

wrongfully discharged after blowing the whistle on inmates "not receiving necessary medicines and were going for months or even over a year without being treated." *Id.* ¶¶ 36-37, 39.

Defendants rewrite the allegations as "*inconsistent* medical care," Br. at 22, a sleight of hand hiding the allegations of *inadequate* and *absent* medical care.  Defendants also say "none of the allegations raised relates to any of the named Plaintiffs." *Id.*  Not only does this ignore the *class-wide* allegations set out above, it also ignores extensive *plaintiff-specific* allegations.[10] And it improperly invites—without citing authority— the Court to ignore allegations about absent class members, including at least one death.  Am. Compl. ¶ 38 (cadre refused emergency medical care for 15 hours for a brain blood clot later dies from it).  The Court simply could not dismiss the plainly and plausibly pled allegations of deficient medical care without engaging in a factual inquiry it cannot do at this stage.  *See Smith v. Carpenter*, 316 F.3d 178, 188 n.14 (2d Cir. 2003) (in denying new trial post-verdict:  "the 'seriousness' determination [in Eighth Amendment denial of medical care cases] will often be ill-suited for resolution at the pleading stage and will have to await summary judgment proceedings, at which point a fully developed medical record will inform the court as to the nature of the inmate's condition.'") (internal citation omitted).[11]

---

[10] Am. Compl. ¶ 67 (Plaintiff Crespo, a diabetic, is denied any food and his necessary medication for three days), ¶ 68 (he has to be transported offsite for emergency care and prescribed antibiotics after fainting from contracting an infection and having "multiple requests to be seen" by medical personnel denied), ¶ 80 (Plaintiff Podias "received a serious cut to his hand" and "fainted from blood loss," but his "multiple requests for medical assistance" go ignored for "over an hour" despite "substantial bleeding"), ¶ 86 (Plaintiff Juste's anal bleeding goes untreated for months), ¶¶ 92-95 (Plaintiff Joseph is not allowed to continue off-site treatment for a pre-existing stroke; shortly thereafter he "began bleeding from both of his ears" but his "repeated requests for medical attention were ignored for several weeks," followed by inadequate treatment for fainting and dizzy spells), ¶¶ 101-02 (Plaintiff Espinal is never given his prescribed antibiotics to treat a staff infection of a toenail, and is then forced to work against doctor's orders).

[11] *Id.* ("We do not mean to suggest that Smith's claim would not have survived a motion to dismiss or motion for summary judgment."); *Chance v. Armstrong,* 143 F.3d 698, 702-03 (2d Cir. 1998) (noting in reversal of dismissal: "It may become clear, at summary judgment or at some later stage … that these claims are not adequately supported. But at the 12(b)(6) stage, we must accept the plaintiff's allegations as true and may not dismiss the case unless it is clear that it would be impossible for the plaintiff to make out a legally cognizable claim.").

## 2.    Plaintiffs Properly Pled the Objective Requirement for "Sufficiently Serious" Deficiencies in Living Conditions and Food

This Circuit has long recognized that plaintiffs can satisfy the objective requirement for an Eighth Amendment violation by showing inadequate and unsanitary living conditions and food.  That can be "inadequate space and ventilation" and other "unsanitary conditions, including urine and feces." *Walker*, 717 F.3d at 126 (reversing dismissal).  It can be a "rodent infestation" and "unsanitary conditions" like allowing "an area to remain filled with sewage and excrement." *Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001).  Or it can be lack of a "nutritionally adequate diet." *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (reversing dismissal).[12] It can also be inadequate ventilation, cells or common spaces "infested with insects and rodents," and being "exposed to asbestos, black mold and human waste." *Reid*, 2014 WL 4185195, at *15.

Plaintiffs allege these very sorts of unsanitary and inhumane conditions of confinement. That includes that units "were entirely cut off from sunlight and fresh air" with "no outside access whatsoever for the vast majority of Cadre," with some going "more than two and a half years without once seeing sunlight [or] breathing fresh air."  Am Compl. ¶¶ 3, 43, 53.  Lights "were never turned completely off" and the ventilation and filtration system had not been properly cleaned, and so they "appeared to contain mold" and were "visibly clogged." *Id*. ¶ 43. Mattresses "were often stained with urine and feces," and "fecal, urine and other particulate matter" is allowed to "circulate throughout the unit." *Id*. ¶ 44.  Mold is "clearly visible on the showers, floors and walls," and toilets are "artificially restricted in how often they can be flushed, resulting in feces and urine" in close proximity to cadre. *Id*. ¶¶ 44, 47.  There is "airborne fecal matter, mold, asbestos and other unknown particulate matter," and water access is shut off for unknown reasons. *Id*. ¶¶ 48, 51. The medical facilities are "unsanitary, with vermin

---

[12] *See also Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (reversing dismissal, "contamination of food" claim).

droppings and other contaminations visible." *Id.* ¶ 37. Food preparation areas are "habitually contaminated by the visible presence and droppings of rats, mice, cockroaches and flies," and the food served to cadre is "frequently spoiled and moldy." *Id.* ¶¶ 58-59.

Defendants' string cite of cases does not preclude Plaintiffs' claims. *See* Br. at 16, n.7. Many involve summary judgment rulings that reinforce why dismissal on the pleadings is not appropriate here. *See, e.g.*, *Rhodes*, 452 U.S. at 341 (1981) (summary judgement granted based on a full factual record of "unquestionably a top-flight, first-class facility").[13] Even the decisions on motions to dismiss are distinguishable because (in addition to some not being in this Circuit) they did not involve the serious allegations pleaded here.[14] Defendants' shotgun approach also misses the point entirely. It is not enough to find a case here or a case there in which a court found that a particular allegation in isolation was not a constitutional violation. The correct analysis is to determine whether the complaint as a whole, and the confluence of conditions it alleges, rises to a constitutional violation. *Walker*, 717 F.3d at 125 (reversing dismissal and holding that "conditions of confinement may be aggregated" into a constitutional violation "when they have a mutually enforcing effect that produces the deprivation of a single, identifiable, human need such as food, warmth, or exercise.") (quoting *Wilson v. Setter*, 501 U.S. 294, 304 (1991)). Here, the pleaded deficient living conditions and food plainly coalesce into significant deprivations of basic human needs for shelter, health, hygiene, and eating.

---

[13] The findings there stand in stark contrast to allegations here: food was "adequate in every respect," "kitchens and dining rooms are clean," the "air ventilation system was adequate", and the facility was "light" and "airy." *Id.* at 341-42. *See id.* at 363-64 (Justice Brennan, in concurring, sets out framework for inquiry required in these cases). *See also Jones*, 435 F. Supp. 2d at 227-28, 237 (summary judgment granted on an "elaborate record" following "extensive discovery," including an expert tour of four "exemplary" facilities, which found evidence of little more than "[s]haring a cell with an individual with body odor, or an individual who does not bathe frequently").

[14] *See, e.g.*, *Brown v. McElroy*, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001) (cold cells and dirty linens); *Colon v. Howard*, 215 F.3d 227, 230 (2d Cir. 2000) (being held in the SHU, raising Due Process, not Eighth amendment, claims); *Sealey v. Giltner*, 197 F.3d 578, 581 (2d Cir. 1999) (same).

### 3.    Plaintiffs Properly Pled the Subjective Requirement for Showing Defendants' "Deliberate Indifference" to the Challenged Conditions

In *Farmer*, the Supreme Court held that the subjective requirement for an Eighth Amendment violation can be shown by a prison official's "deliberate indifference," *i.e.*, that the official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." 511 U.S. at 847. This requires no more than a showing "that the official was subjectively aware of the risk" to inmate health or safety, which can be "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 829, 835. "[A]cting or failing to act with deliberate indifference … is the equivalent of recklessly disregarding that risk," and so "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 836, 842. *See also Walker*, 717 F.3d at 125 ("that a risk was 'obvious or otherwise must have been known to a defendant' may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk.").[15]

Despite that deliberate indifference is the prevailing standard (including in this Circuit), it is all but ignored in Defendants' brief—made all the more glaring by their made-up replacement. So vague as to be no standard at all, it is a patchwork of undefined, uncited requirements that each Defendant be shown to have "personally violated" the Eighth Amendment when he or she "personally committed," and was "personally responsible for," the violations. Br. at 18-19. Stray references to *Iqbal*'s requirement that Defendants be "personally involved" in the challenged

---

[15] Though "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk," *Farmer*, 511 U.S. at 844, such an inquiry is unsuitable on the pleadings—indeed Defendants do not seem to raise it. *See Reid*, 2014 WL 4185195 at *18 (ruling reasonableness of response is "properly determined by the finders of fact, not on a motion to dismiss on the pleadings").

conduct through their "own individual actions" provide no clarity. *Id*. at 17, 19.[16]  Defendants never adequately explain how to apply the proposed standard here nor how to reconcile it with the fact that Second Circuit has sided with four other Circuits in holding that "*Iqbal* does not preclude *Bivens* claims premised on deliberate indifference when"—as is the case with Eighth Amendment claims—"the underlying constitutional violation requires no more than deliberate indifference." *Turkmen v. Hasty*, 789 F.3d 218, 228 (2d Cir. 2015).[17]

When reviewing the *Turkmen* decision (and reversing it on other grounds), the Supreme Court found the plaintiffs plausibly pled constitutional violations and the warden's deliberate indifference by alleging that "inmate complaints" and "staff complaints" to the warden resulted in "no action to rectify or address the situation." *Abassi*, 137 S. Ct. at 1863–64. (internal quotations omitted).  In another post-*Iqbal* Eighth Amendment prison conditions case, the Second Circuit held that inmates properly pled the deliberate indifference of a warden and other prison officials by alleging the defendants' failure to improve conditions that were obvious, their failure to perform assigned duties related to the conditions, and complaints about the conditions that inmates made to the defendants. *Walker*, 717 F.3d at 129-30.  Additionally, the Second Circuit ruled that an inmate could plead deliberate indifference by alleging that the warden

---

[16] Many of the cases Defendants cite alongside *Iqbal* apply the deliberate indifference standard, and their dismissals result from complaints devoid of key allegations. *See, e.g.*, *Gray v. Metro. Det. Ctr.*, 2011 WL 2847430, *11 (E.D.N.Y. July 15, 2011) (dismissing *pro se* complaint with no allegations of the defendants' "actual knowledge" of the challenged conduct); *Johnson v. New York*, 2012 WL 5424515, *2 (E.D.N.Y.  Nov. 6, 2012) (Mauskopf, J.) (dismissing *pro se* complaint with no allegations of the defendant's "own actions" contributed to violation).
[17] Defendants also suggest that after *Iqbal*, supervisory liability cannot be shown under the Second Circuit's so-called *Colon* test in any but the most limited circumstances. Br. at 17, n.8.  Their only Second Circuit cite for that proposition is the footnote of a decision in a civil rights racial discrimination case that expressly sidestepped the issue.  *See Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("the fate of *Colon* is not properly before us"). The Second Circuit's subsequent decision in *Turkmen* has rendered that footnote irrelevant, as it has the district court decisions Defendants cite for the same proposition. Br. at 17, n.8.  *See also Bellamy v. Mount Vernon Hosp.*, 2009 WL 1835939 (S.D.N.Y. June 26, 2009).

received a letter describing the challenged conditions and did nothing to change the conditions. *Grullon v. City of New Haven*, 729 F.3d 133, 141 (2d Cir. 2013) (reversing denial to amend).

Plaintiffs' allegations fall squarely within this extensive precedent. They plausibly allege deficient conditions that would be obvious to the Defendants as they carried out their work, in addition to extensive grievances and complaints made to them by inmates about those conditions. *See Reid*, 2014 WL 4185195 at *18 (finding it "sufficient at the pleadings stage to satisfy the subjective element of a deliberate indifference claim" to allege conditions that are "arguably obvious" and that plaintiffs and "other inmates" filed grievances and complaints about challenged conditions). Specifically, Plaintiffs allege that Defendants did nothing to improve conditions at MDCB despite being made aware of them "not only from the inherent responsibility and authority of their positions but also from multitudinous informal and formal complaints by members of the Plaintiff classes and other non-Plaintiff class inmates." Am. Compl. ¶ 31. These included oral complaints, Plaintiff Crespo's efforts to exhaust his administrative remedies, and a twice-a-month "main line" meeting during which cadre lodged complaints directly with Defendants. *Id.* ¶ 32. "Defendant Warden Quay admitted that medical services at MDC Brooklyn ("MDCB") were inadequate and that the BOP could not find sufficient doctors to service the needs of prisoners." *Id.* ¶ 40. And the U.S. Office of Special Counsel ordered the reinstatement of a discharged MDCB doctor who "raised concerns to her supervisors" about deficient medical care. *Id.* ¶ 39. Moreover MDCB, by design, ensured certain of the conditions (*e.g.*, utter lack of sunlight and fresh air), which were corroborated by Defendant Quay when he said that MDCB was not meant for long-term confinement and he was ordered to treat cadre, who are sentenced inmates, like pre-trial detainees. *Id.* ¶ 2. In addition, extensive "media coverage and multiple reports by the National Association of Women Judges"

14

about conditions for female cadre corroborates those for male cadre, which stem from being fed, housed, and receiving medical care from the same source as the female cadre did. *Id.* ¶ 31. These detailed allegations show Defendants' deliberate indifference.

The allegations also make clear that Defendants are simply wrong to say that the complaint relies on "general statements" about their personal involvement, Br. at 21, and that "[a]t no point have Plaintiffs linked each general allegation to the individual conduct of any Defendant." Br. at 17. *See Phelps*, 308 F.3d at 187 n.6 (2d Cir. 2002) ("[The] Amended Complaint is not 'general and conclusory,' for it is obvious that he has a right to be free from inhumane conditions of imprisonment, and he has stated who allegedly violated that right, when, by what means, and how the violation harmed him."). Defendants are equally off base saying that the complaint relies on the "vicarious liability" of officials who merely "permitted" the violations to occur with "mere knowledge" of the challenged conduct. Br. at 18, 20.[18] In fact, Plaintiffs plainly and plausibly plead—especially so with every inference made in their favor—that each Defendant knew of the challenged conditions because they were told about them, the conditions were obvious, and numerous public reports confirmed them.

Defendants would have the Court ignore the actual allegations and dismiss the complaint based on a made-up subjective requirement standard, a non-existent heightened pleading

---

[18] Most of the district court case cited by Defendants involve *pro se* complaints—all are distinguishable on factual, procedural, or claims grounds. *See, e.g., Abernathy v. Strada*, 2015 WL 997980 (E.D.N.Y. Mar. 6, 2015) (summary judgment in a *pro se* case asserting First Amendment claims); *Wingate v. Horn*, 2007 WL 30100 (S.D.N.Y. Jan. 4, 2007) (summary judgment in a *pro se* voting rights case); *Smart v. Goord*, 441 F. Supp. 2d 631 (S.D.N.Y 2006) (Court's ruling on subjective requirement in this *pro se* case involved due process claims); *Lindsey v. Butler*, 43 F. Supp. 3d 317 (S.D.N.Y. 2014) (*pro se* case about "post-arrest questioning"); *Goris v. Breslin*, 2006 WL 1313823 (E.D.N.Y. May 12, 2006) (*pro se* preliminary injunction decision concerning holes in a gymnasium floor); *Carson v. Lewis*, 35 F. Supp. 2d 250 (E.D.N.Y. 1999) (summary judgment of false arrest, police misconduct, and equal protection claims); *Tyler v Dunne*, 2016 WL 4186971 (E.D.N.Y. Aug. 8, 2016) (Mauskopf, J.) (*sua sponte* dismissal of *pro se* case alleging "no facts" against the defendants); *Bellamy*, 2009 WL 1835939 (summary judgment in *pro se* case with distinguishable facts); *Adekoya v. Holder*, 751 F. Supp. 2d 688 (S.D.N.Y. 2010) (*pro se* case on distinguishable facts); *Greenwaldt v. Coughlin*, 1995 WL 232736 (S.D.N.Y. Apr. 19, 1995) (*same*).

standard,[19] and factual findings that cannot be made on a motion to dismiss. *See Grullon*, 720 F.3d at 140 ("personal involvement is a question of fact") (internal quotations omitted); *Farmer*, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact"). But when applying the correct standards and binding precedent, it is clear that qualified immunity cannot be shown as to the subjective or objective requirements.

## III.    PLAINTIFFS' BIVENS CLAIMS ARE NOT NOVEL AND NO SPECIAL FACTORS OR ALTERNATIVE REMEDY COUNSELS AGAINST THEM

Plaintiffs seek money damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, which established that federal officials can be held individually liable for damages for constitutional violations. 403 U.S. 388 (1971); *See Carlson v. Green,* 446 U.S. 14, 18 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."). In *Carlson,* the Supreme Court extended *Bivens* liability to federal prison officials who fail to properly execute their constitutionally imposed duties and thereby harm the inmates under their care. 446 U.S. 14. Defendants contend that the Supreme Court's recent decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) forecloses Plaintiffs' *Bivens* claims. Br. at 7. However, their argument is based on an incorrect reading of *Abassi* and ignores strong precedent for the Plaintiffs' *Bivens* claims that was left fully intact by the Supreme Court.

In *Abassi*, the Supreme Court made clear that a two-part test determines whether a *Bivens* action may proceed. 137 S. Ct. at 1859-60. First, "a court must ask . . . whether the claim arises in a new *Bivens* context, *i.e.*, whether the case is different in a meaningful way from previous

---

[19] Defendants cite no authority supporting a heightened pleading requirement that Plaintiffs allege "with particularity" the "nature of the alleged complaints made …, the time the complaints were made, who made the complaints, and to whom the complaints were directed." Br. at 20. *See Phelps*, 308 F.3d at 186-87 (reversing dismissal, Second Circuit cautions a "court may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference").

*Bivens* cases decided by this Court." *Id.* at 1864 (internal quotations omitted). The Court provided a list of factors to consider in determining whether a context was new, including the "constitutional right at issue" and "the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted." *Id.* at 1860. The Court also made clear that not all differences are meaningful. *Id.* at 1865 ("Some differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context."). If the *Bivens* claim does not arise in a new context, it proceeds without further inquiry. But if a court finds that the context is new, it must conduct the second part of the test: a special factors analysis of "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858

### A.     Plaintiffs' Medical Care Claims Do Not Arise In A New *Bivens* Context And Fall Squarely Under Existing Supreme Court Precedent

Defendants say the medical care claims "are 'conclusory' assertions and 'so dissimilar' from the circumstances of *Carlson* as to render 'their context . . . new,'" Br. at 9, and suggest that Plaintiffs must die in order to bring Eighth Amendment *Bivens* claims. Br. at 2. Not only are Defendants' radical positions contrary to controlling law, the circumstances here are in fact highly analogous to prior Supreme Court precedent and do not arise in a new *Bivens* context.

In *Abassi,* the plaintiffs, unlawfully present aliens detained in the wake of the September 11, 2001 terrorist attacks, alleged they had been subjected to verbal and physical abuse at MDCB in violation of their Fifth Amendment rights and that its warden had been deliberately indifferent to the abuse. 137 S. Ct. at 1853, 1863-64. Although the Court agreed with the Second Circuit that the allegations plausibly alleged a constitutional violation, it held that those claims arose in a

new *Bivens* context and remanded the case back to the lower courts with instructions to perform a special factors analysis. *Id.* at 1864-65. The Supreme Court analyzed three differences between *Abassi* and *Carlson*: 1) the constitutional right at issue; 2) the judicial precedents available to meaningfully guide official conduct; and 3) if there are potential special factors that were not considered in previous *Bivens* cases. 137 S. Ct. at 1864-65. The Court wrote that the *Abassi* case had "significant parallels to one of the Court's previous *Bivens* cases, *Carlson v. Green* . . . There, the Court did allow a *Bivens* claim for prisoner mistreatment – specifically, for failure to provide medical care." *Id.* at 1864. This language alone is sufficient to find that Plaintiffs' claims here for failure to provide adequate medical care may proceed under *Carlson.*

But the Court's new context analysis in *Abassi* makes this even clearer. Regarding the constitutional right at issue, both the claims in *Carlson* and Plaintiffs' claims here originate under the Eighth Amendment, while those in *Abassi* arose under the Fifth. *Abassi,* 137 S. Ct. at 1864; Am. Compl. ¶¶ 1, 6. Regarding the availability of judicial precedents, "[t]he Court has long made clear the standard for claims alleging failure to provide medical treatment to a prisoner—'deliberate indifference to serious medical needs.'" *Abassi*, 137 S. Ct. at 1864 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). That is precisely what is alleged here: an Eighth Amendment violation for failing to provide adequate medical care. Am. Compl. ¶ 35. Regarding special factors not previously considered, the Court noted "[t]his case also has certain features that were not considered in the Court's previous *Bivens* cases and that might discourage a court from authorizing a *Bivens* remedy" and speculated, but did not hold, that some form of equitable relief "might have been" available to the plaintiffs in *Abassi*. *Id.* at 1865. Those "certain features" in *Abassi*, relating to issues of physical and emotional abuse of unlawfully present aliens after the terrorist attacks of September 11, 2001, are clearly not present here. *Id.*

Regarding the availability of alternative remedies, the Supreme Court in *Farmer*, in reversing the dismissal of a *Bivens* action brought by a federal inmate under the Eighth Amendment against federal prison officials, did not prohibit the plaintiff from seeking both injunctive relief and compensatory and punitive damages for the harms she had already suffered. 511 U.S. at 831.  For the Plaintiffs released prior to the commencement of this action, equitable relief is no relief at all and for them "it is damages or nothing."  *Abassi*, 137 S. Ct. at 1862 (quoting *Bivens*, 403 U.S. at 410 (Harlan, J., concurring in judgment)).  For Plaintiff Crespo and other class members who remained in MDCB post-filing, equitable relief provides no redress for the unconstitutional harms suffered prior to the commencement of this action or during its pendency.  *Cuevas v. United States*, 2018 WL 1399910, at *4 (D.  Colo.  Mar. 19, 2018) (holding that "injunctive relief is simply inadequate" to compensate for Eighth Amendment harms already suffered by a federal inmate and authorizing a *Bivens* action).  *See also Minneci v. Pollard*, 565 U.S. 118, 130 (2012) (denying *Bivens* relief to federal prisoners in private prisons on the grounds that state law claims are adequate because they "provide roughly similar incentives for potential defendants to comply with the Eighth Amendment while also providing roughly similar compensation to victims of violations.").  Thus, other adequate remedies do not exist here.

Whereas in *Abassi* the "differences between this claim and the one in *Carlson* are perhaps small," 137 S. Ct. at 1865, here the differences in Plaintiffs' medical care claims are *trivial*, which "will not suffice to create a new *Bivens* context."  *Id.* Plaintiffs allege Defendants failed to provide constitutionally adequate medical care in violation of the Eighth Amendment.  Am. Compl. ¶ 35.  Similarly, in *Carlson*, the case was about federal prison officials' failure to provide an inmate with adequate medical care, in violation of his Eighth Amendment rights. 446 U.S. at

16. And other courts post-*Abassi*, including one in this district, have permitted *Bivens* claims for failure to provide adequate medical to proceed.[20] This case falls squarely within that precedent.

**B.    Plaintiffs' Living Conditions and Food Allegations Also Do Not Arise in a New *Bivens* Context And Also Fall Within Binding Precedent**

Plaintiffs' living conditions and food claims also do not arise in a new *Bivens* context. Defendants assert that Plaintiffs cannot bring *Bivens* claims against them for "confining them in conditions that amounted to cruel and unusual punishment (*i.e.*, serving them spoiled food, limiting their access to sunlight, and exposing them to particulate matter)." Br. at 8-9. Their position would mean that federal prison officials could impose any conditions of confinement, no matter how outrageous or unconstitutional, without being personally liable to those they harmed. This position is not only extreme, it is contrary to rulings by the Supreme Court, which in *Farmer* (a *Bivens* action) made it clear that prison officials are obligated by the Eighth Amendment to provide adequate living conditions and food. 511 U.S. at 832 ("prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care.").

Akin to their inadequate medical care claims, Plaintiffs' *Bivens* claims for inadequate living conditions and food represent a trivial departure from *Carlson* and therefore do not arise under a new context. Am. Compl. ¶¶ 42, 53, 57. Similar to the medical care claims under the Eighth Amendment in *Carlson*, the Plaintiffs' Eighth Amendment claims here relate to the fundamental conditions of their confinement and their basic human needs for food and shelter. Also like *Carlson*, and unlike *Abassi*, the legal standard under which Eighth Amendment living conditions claims are to be evaluated is well-established and the judicial guidance, both from the

---

[20] *See Laurent v. Borecky*, 17-CV-3300 (PKC) (LB), 2018 WL 2973386, at *3 (E.D.N.Y. June 12, 2018) (denying motion to dismiss because claims of failure to provide constitutionally adequate medical care by MDCB physician were not a new *Bivens* context); *Carlucci v. Chapa*, 884 F.3d 534, 538-40 (5th Cir. 2018) (reversing the dismissal of a federal prisoner's *Bivens* claim for deliberate indifference to his serious medical needs in receiving dental care).

Supreme Court and the Second Circuit, is clear (and left undisturbed by *Abassi*).[21]  Finally, providing sentenced, minimum-security federal inmates with adequate food and living conditions does not involve any of the distinct facts present in *Abassi*, which was "a claim alleging that a warden allowed guards to abuse pre-trial detainees."  137 S. Ct. at 1864-65.  Thus Plaintiffs' *Bivens* claims for inadequate living conditions and food should be allowed to proceed because they are trivially distinct from *Carlson* and *Farmer*, and so do not arise in a new *Bivens* context.

### C.     Plaintiffs' *Bivens* Claims Also Survive Under A Special Factor Analysis And There Is No Adequate Alternative Remedy To *Bivens* Damages

Even if this Court were to find that Plaintiffs' *Bivens* claims arose in a new context, that does not foreclose their *Bivens* remedy.  Rather, the Court must conduct a special factors analysis to determine whether there are alternative remedies available that adequately protect Plaintiffs' interests and whether there are any special factors counseling hesitation in authorizing a *Bivens* remedy.  *Abassi*, S. Ct. 137 at 1857-58.  Defendants cursorily assert that there were five potential alternative remedies available to the Plaintiffs,[22] but a closer analysis reveals that every one of them is either non-existent or plainly inadequate to protect Plaintiffs' Eighth Amendment rights.

Since both habeas relief and injunctive relief are prospective equitable remedies, they do nothing at all to compensate for harms already suffered.  *See, e.g.*, 28 U.S.C. PT. VI, Ch. 153.  In addition, injunctive relief does not adequately dissuade federal officials from wrongdoing, as

---

[21] *Walker*, 717 F.3d at 125 ("To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that:  (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with a 'sufficiently culpable state of mind ..., such as deliberate indifference to inmate health or safety.'") (citing *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (quoting *Farmer*, 511 U.S. at 834).  *See also Abassi*, 137 St. at 1863-64 ("the Court of Appeals held that the substantive standard for the sufficiency of the claim is whether the warden showed "deliberate indifference" to prisoner abuse.  The parties appear to agree on this standard, and, for purposes of this case, the Court assumes it to be correct.") (internal citations omitted).

[22] The purported remedies are:  habeas relief; equitable relief; the Federal Tort Claims Act; state-law tort claims; and the BOP's Administrative Remedy Program.  Br. at 10-11.

injunctive relief attaches only against the federal government rather than the Defendants.[23]  So habeas relief and injunctive relief are inadequate remedies.  *Minneci*, 565 U.S. at 130 (holding that the question of whether an alternative to a *Bivens* remedy is adequate is if it "provide[s] roughly similar incentives for potential defendants to comply with the Eighth Amendment while also providing roughly similar compensation to victims of violations").

The Supreme Court has repeatedly rejected the Federal Torts Claims Act as an alternative for a *Bivens* remedy.  *Carlson*, 446 U.S. at 19-23.[24]  In *Abassi*, the Court signaled its continued view that the FTCA does not qualify as an alternative remedy for constitutional violations. 137 S. Ct. at 1856 ("In an analogous context, Congress, it is fair to assume, weighed those concerns in deciding not to substitute the Government as defendant in suits seeking damages for constitutional violations.  See 28 U.S.C. § 2679(b)(2)(A) (providing that certain provisions of the Federal Tort Claims Act do not apply to any claim against a federal employee 'which is brought for a violation of the Constitution'").[25]  Thus the FTCA is not an adequate alternative remedy.

Defendants' claim regarding the availability of state-law tort claims is directly contrary to Supreme Court precedent.[26]  The sole authority they cited is not only factually distinct, involving First and Fourth Amendment claims in a case about TSA screening, but held that a state-law tort claim was <u>not</u> available.  *Vanderklok v. United States*, 868 F.3d 189, 204 (3d Cir. 2017) ("there

---

[23] *Turkmen v. Ashcroft*, 2018 WL 4026734, at *11 (E.D.N.Y. Aug. 13, 2018) ("Plaintiffs are plainly correct that an award of equitable relief would not provide them with monetary compensation for violations of their rights that had already occurred, and likely would not provide defendants with as strong an incentive to avoid violating constitutional rights as would money judgments entered against them personally.").  *See Lipscomb v. Hufford*, 2017 WL 3267732, at *6 n.12 (S.D.N.Y. July 28, 2017) ("Plaintiff cannot … proceed against federal officials in their individual capacities for injunctive relief under *Bivens*, as *Bivens* claims are limited to claims seeking damages.").
[24] *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) ("We also found it 'crystal clear' that Congress intended the FTCA and *Bivens* to serve as 'parallel' and 'complementary' sources of liability") (citation omitted).

[25] *See also Linlor v. Polson*, 263 F. Supp. 3d 613, 621 (E.D. Va. 2017) ("An FTCA claim is simply not 'a substitute for a *Bivens* action.'") (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983) and collecting cases).

[26] *Minneci*, 565 U.S. at 126 ("Prisoners ordinarily *cannot* bring state-law tort actions against employees of the Federal Government.") (emphasis in original).

are no alternative judicial remedies available").  Regarding the BOP's Administrative Remedy Program, a full ten pages of the complaint detail Plaintiff Crespo's Kafkaesque journey through the process, which resulted in no remedial action by MDCB or BOP.  Those allegations belie any claim that it constitutes a remedy at all, much less an adequate one.  Am. Compl. ¶¶ 104-143. Moreover, it is well-established that neither the PLRA nor the Administrative Remedy Program established thereunder apply to individuals who are no longer incarcerated.[27]  Finally, the PLRA is clear that it functions as a procedural hurdle and not a substantive alternative remedy. 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted.").  Thus all administrative remedies were exhausted or were not available in the first place.

Defendants also contend that "Plaintiffs' claims implicate the conditions of MDC Brooklyn confinement afforded inmates by BOP regulations" and imply that unconstitutionally deficient medical care, living conditions and food at MDC Brooklyn are the result of "programmatic decisions" and are therefore non-reviewable by the courts.  Br. at 12.  This argument is a red herring.[28]  In *Abassi*, the Court distinguished between claims relating to "formal policy adopted by the Executive Officials in the wake of the September 11 attacks" and "the prisoner abuse claim against the MDC's warden," holding that the former precluded a *Bivens* action while the latter required a special factors analysis due to its departure from *Carlson*. 137 S. Ct. at 1858, 1863-65. Plaintiffs do not challenge the validity of any BOP or MDCB regulation or policy but rather allege that Defendants failed to properly implement and

---

[27] *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) ("we hold that litigants-like Greig-who file prison condition actions after release from confinement are no longer 'prisoners' for purposes of § 1997e(a) and, therefore, need not satisfy the exhaustion requirements of this provision.")

[28] *Farmer*, 511 U.S. at 832 ("it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to [Eighth Amendment] scrutiny.'") (quoting *Helling*, 509 U.S. at 31).

execute those regulations and policies, thereby harming Plaintiffs in violation of their Eighth Amendment rights. *See, e.g.,* Am. Compl. ¶¶ 35, 42, 57.  In order to accept the Defendants' argument, this Court would have to accept that it is BOP policy to provide unconstitutionally inadequate medical care, living conditions and food.  Plaintiffs have not alleged this and Defendants point to no policy or regulation to the contrary.

Consistent with *Carlson* and *Farmer* and their Second Circuit progeny, this Court should find that a *Bivens* remedy is authorized against the Defendants here.

## IV. PLAINTIFFS JUSTE AND ESPINAL DID NOT HAVE TO EXHAUST THEIR ADMINISTRATIVE REMEDIES, THOUGH THEY DID SO VICARIOUSLY.

Defendants argue damages claims by Plaintiffs Espinal and Juste should be dismissed on summary judgment because they failed to exhaust their administrative remedies when filing their original complaint.  Br. at 13-15.  But since they later filed an *amended* complaint after being released from custody, they are no longer subject to the exhaustion requirements.

The Prison Litigation Reform Act ("PLRA") requires "prisoners," defined as "any person incarcerated or detained in any facility," to exhaust certain administrative remedies before filing a lawsuit. 42 U.S.C. § 1997e(h).  This requirement, however, does not apply to litigants who file their lawsuit *after* being released from custody.  *See Greig*, 169 F.3d at 167 (reversing district court's dismissal of parolee's prison conditions action because the plaintiffs were "no longer 'prisoners' for purposes of [42 U.S.C.] § 1997e(a), and, therefore, need not satisfy the exhaustion requirements of this provision").  Plaintiffs' status is determined at the time of the *operative* complaint, which here is the *amended complaint. See Ojo v. United States*, 15-CV-6089 (ARR) (LB), 2018 WL 3863441, at *8 n.5 (E.D.N.Y. Aug. 14, 2018) ("federal courts have found that the PLRA's exhaustion requirement does not apply when a plaintiff files suit while incarcerated but later amends the complaint after release") (citing *Jackson v. Fong*, 870 F.3d 928, 935 (9th

Cir. 2017) (holding that exhaustion requirements apply based on when a plaintiff files operative complaint) and *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005)).  Plaintiffs' complaint, *as amended*, was filed on July 6, 2018 [ECF No. 34], at which point Plaintiffs alleged—and even Defendants' cited declaration proves—that Mr. Espinal and Mr. Juste had been released from custody (on December 19, 2017 and May 25, 2018, respectively).  *See* Am. Compl. ¶¶ 13, 15; Declaration of Michael Cardew ("Cardew Decl.") ¶¶ 17, 20.  Therefore, neither of them was subject to the PLRA's exhaustion requirements and Defendants' motion fails.

But even if subjected to the PLRA, they exhausted their administrative remedies.  In class actions, one class member exhausting his or her remedies has done so on behalf of the entire class.  *See Butler v. Suffolk Cty.*, 289 F.R.D. 80, 97 (E.D.N.Y. 2013) (citing *Gates v. Cook*, 376 F.3d 323, 330 (5th Cir. 2004) (stating that one class member's exhaustion "is enough to satisfy [the PLRA's exhaustion] requirement for the class")); *Jackson v. Dist. of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001) (same).[29]  Since Defendants do not challenge that Plaintiff Crespo completed the BOP Administrative Remedy process, his fulfillment of the PLRA's exhaustion requirement (which has been pleaded in detail) applies vicariously to Plaintiffs Espinal and Juste.

Defendants are thus not entitled to summary judgment on failure to exhaust remedies.[30]

## CONCLUSION

For the foregoing reasons, the Court should deny in its entirety Defendants' motion to dismiss or, in the alternative, for partial summary judgment.

---

[29] Vicarious exhaustion is consistent with the PLRA's exhaustion requirement, which "allows prison officials an opportunity to address the merits of a claim"; "requiring all class members to exhaust could unduly burden a complaint system."  *In re Nassau Cty. Strip Search Cases*, 2010 WL 3781563, at *8 (E.D.N.Y. Sept. 22, 2010).

[30] Even if the Court relied on the date the original complaint was filed, the Court would need to dismiss *without* prejudice and permit Plaintiffs Espinal and Juste to replead their current released status—which, of course, the operative complaint already does.  *See Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004) (recognizing that "dismissal without prejudice is appropriate" where litigants could easily cure their failure to exhaust).

Dated:   New York, New York
         October 19, 2018                  Respectfully submitted,

                                           /s/ Eric. S. Hochstadt
                                           Eric S. Hochstadt
                                           Kaj Rozga
                                           David F. Hill, IV
                                           Zachary Taylor
                                           Calvin Lee
                                           WEIL, GOTSHAL & MANGES LLP


                                           767 Fifth Avenue
                                           New York, New York 10153
                                           Telephone:  (212) 310-8000
                                           Facsimile:  (212) 310-8007

                                           *Pro Bono Counsel for Plaintiffs*
                                           *David Crespo, Pedro Espada, Jr.,*
                                           *Anthony Podias, Anthony Joseph,*
                                           *Kesnel Juste and Rolfi Espinal*

To:  All Counsel of Record (by Overnight Courier Service and email)