UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DAVID CRESPO, ANTHONY PODIAS, PEDRO ESPADA, JR., ROLFI ESPINAL, KESNEL JUSTE, and ANTHONY JOSEPH, on their own behalf, and on behalf of two classes of similarly situated prisoners,

                      Plaintiffs,

- against -

HUGH HURWITZ, MICHAEL CARVAJAL, HERMAN QUAY III, KIMBERLY ASK-CARLSON, GERARD TRAVERS, WAYNE DECKER, and MARY LOU COMER,

                      Defendants.
-----------------------------------------------------------------X

**ORDER ADOPTING REPORT AND RECOMMENDATION**
17-cv-6329 (RRM) (PK)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Plaintiffs David Crespo, Anthony Podias, Pedro Espada, Jr., Rolfi Espinal, Kesnel Juste, and Anthony Joseph, who were formerly inmates serving sentences of incarceration at the Metropolitan Detention Center Brooklyn ("MDC Brooklyn"), bring this putative class action against MDC Brooklyn employees – federal officials Kimberly Ask-Carlson, Michael Carvajal, Wayne Decker, Herman Quay III, Gerard Travers, Hugh Hurwitz, and Mary Lou Comer – alleging that their Eighth Amendment rights were infringed because of deficient medical care and inhumane conditions of confinement. (*See* Am. Compl. (Doc. No. 34).) Defendants moved to dismiss Plaintiffs' claims, or in the alternative, for partial summary judgment. (Motion to Dismiss ("Mot.") (Doc. No. 47).) The Court referred Defendants' motion to dismiss to Magistrate Judge Peggy Kuo for a Report and Recommendation. (Order of May 21, 2018.) On May 17, 2020, Magistrate Judge Kuo filed a Report and Recommendation recommending that Defendants' motion to dismiss be granted with respect to Count I but denied with respect to Count II. (Report and Recommendation ("R&R") (Doc. No. 57).)

Plaintiffs object to the R&R with respect to Count I, (Pls.' Obj. (Doc. No. 63)), and Defendants object to the R&R with respect to Count II, (Defs.' Obj. (Doc. No. 64)). Having reviewed the R&R and objections, the Court rejects those objections and adopts the R&R in its entirety.

## BACKGROUND

The Court assumes the parties' familiarity with the facts and procedural history in this case, as well as with Magistrate Judge Kuo's R&R. Nonetheless, the Court recapitulates relevant aspects of the case and the R&R for the convenience of the reader.

In their Amended Complaint, Plaintiffs allege that Defendants violated their Eighth Amendment rights, as well as the rights of putative class members, by housing them in inhumane conditions, restricting their access to fresh air and sunlight, failing to provide them with adequate medical care, and providing them spoiled and contaminated food. (Am. Compl. ¶¶ 41–51, 52–55, 36–38, 58–59.) Plaintiffs claim that Defendants were aware of these deficient conditions due to the "inherent responsibility and authority" of Defendants' positions; local and national news reports on the conditions within MDC; oral complaints made by Cadre to defendants Ask-Carlson, Quay, Travers, Decker, and Comer at "Main Line" meetings held to allow inmates to ask questions and bring complaints; as well as a report by the National Association of Women Judges concerning the conditions of confinement for women inmates at MDC. (*Id.* ¶¶ 31–34.)

In addition to these generally applicable allegations, Plaintiffs also raise allegations of inhumane conditions of confinement and deficient medical care specific to each named plaintiff. Crespo, who suffers from diabetes, was kept in solitary confinement in the Special Housing Unit ("SHU") for three days and denied his food and medications while held in the SHU; he fainted and was taken to the hospital, where he was diagnosed with an unidentified infection. (*Id.* ¶¶

63–68.) Espada, who suffers from asthma, states that his condition has "noticeably worsened" as a result of the "voluminous airborne particulate" and lack of fresh air. (*Id.* ¶¶ 70–75.) Podias alleges that he received a "serious cut" to his hand from jagged metal while performing his duties at MDC Brooklyn and, despite requests for medical assistance, remained untreated for more than an hour until he fainted from blood loss. (*Id.* ¶ 80.) Juste alleges that he began regularly bleeding from his anus in early 2016; his requests for medical assistance were ignored for months, and only after he was transferred to the Federal Correctional Institution, Miami, was he "almost immediately" diagnosed and treated for hemorrhoids. (*Id.* ¶ 86.) Joseph asserts that he suffered a mini-stroke prior to his incarceration, and was denied necessary neurological care at MDC. Despite unexplained dizziness and bleeding from his ears, his requests for treatment were ignored for "several weeks," until he fainted in both September 2016 and October 2016, after which he was admitted to the hospital for ten days. (*Id.* ¶¶ 92–95.) Espinal alleges that he was denied access to "foot powder" and a "basin" that had been prescribed to treat a "staphylococcus aureus" infection in his toe; he was forced to work in a position that required him to wear safety shoes, in contravention of medical advice, which caused him severe pain. (*Id.* ¶¶ 101–102.)

In Count I of the Amended Complaint, Plaintiffs sue defendants Carvajal, Quay, Ask-Carlson, Travers, and Decker ("Individual Defendants") in their individual capacities, seeking monetary damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] Count I is brought as a putative class action by all named plaintiffs and a putative "Damages Class" comprised of "any male minimum-security sentenced inmates who

---

[1] Plaintiffs only set forth one *Bivens* cause of action in their Amended Complaint, which purports to encapsulate all of their alleged mistreatment in MDC Brooklyn. (See Am. Compl. ¶¶ 144–46.) However, like Magistrate Judge Kuo, this Court will construe the Amended Complaint as asserting four *Bivens* claims, each premised on separate factual allegations: deficient medical care; inhumane housing conditions; lack of fresh air and sunlight; and deficient food services. (*See* R&R at 1 n.1.) This also comports with the parties' arguments in support of and in opposition to the Motion.

3

were incarcerated at any point between October 31, 2014, and October 31, 2017… at MDC Brooklyn." (Am. Compl. ¶¶ 23, 144.)  Count II brings claims against defendants Hurwitz, Carvajal, Quay, Travers, and Comer ("Official Defendants") in their official capacities, seeking injunctive relief compelling them to correct the deficient conditions alleged in the Amended Complaint. (*Id.* ¶¶ 43–44; *see also id.* ¶¶ 144–49.)  Count II is brought by plaintiff David Crespo on behalf of himself and the "Injunctive Relief Class," comprised of "any male minimum-security sentenced inmates incarcerated at MDC Brooklyn currently or in the future." (*Id*. ¶¶ 144, 147.)  Plaintiffs have not yet filed a motion to certify these classes.

I.   **Defendants' Motion to Dismiss**

Plaintiffs initiated the instant action on October 31, 2017, and filed an Amended Complaint on July 6, 2018.  Defendants now move to dismiss the Amended Complaint, or, in the alternative, for partial summary judgment. (Memorandum in Support of Defendants' Motion to Dismiss, or, in the Alternative, for Partially Summary Judgment ("Mem.") (Doc. No. 47-2).) Defendants argue that Count II must be dismissed, as sovereign immunity bars suits against federal prison officers in their official capacity, and the Eighth Amendment does not provide an express waiver of sovereign immunity. (Mem. at 12–13.)[2]  Defendants argue that Plaintiffs' *Bivens* claims for inhumane housing conditions, lack of fresh air and sunlight, and deficient food services contained in Count I must be dismissed because they extend *Bivens* actions into a new context, which is disfavored by the Supreme Court. (*Id*. at 15–17.)  Further, defendants identify special factors that counsel against extending *Bivens* into this new context, including the existence of alternative remedies and the Prison Litigation Reform Act. (*Id*. at 17–19.) Regarding Plaintiffs' deficient medical care *Bivens* claim, Defendants argue that plaintiffs Juste

---

[2] All page numbers refer to ECF pagination.

4

and Espinal should see their claims dismissed for failure to exhaust their administrative remedies prior to bringing suit. (*Id*. at 20–22.) Alternatively, Defendants argue that Plaintiffs' deficient medical care *Bivens* claims are barred by qualified immunity and should be dismissed in their entirety. (*Id*. at 20–30.) Defendants argue that Plaintiffs fail to show that their claims of deficient medical care are objectively serious enough to rise to the level of Constitutional violations and fail to plead sufficient facts showing Defendants' personal involvement in the alleged violations. (*Id.*)

## II. Magistrate Judge Kuo's R&R

In the R&R, Magistrate Judge Kuo recommends that Count II not be dismissed, because sovereign immunity does not bar a claim under the Eighth Amendment for injunctive relief against federal prison officers in their official capacity. (R&R at 38.) Additionally, Magistrate Judge Kuo recommends dismissing Count I of Plaintiffs' Amended Complaint because (i) the non-medical *Bivens* claims are foreclosed under both prongs the two-prong test in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), and (ii) the defense of qualified immunity jurisdictionally bars the medical care *Bivens* claims. (R&R at 17, 19–20, 33–36.) In her *Abbasi* analysis, Magistrate Judge Kuo finds that the non-medical *Bivens* claims are meaningfully distinct from those in *Carlson v. Green*, 446 U.S. 14 (1980), because (1) the ranks of the involved officers may be different; (2) the allegations are of generalized conditions and not particular to each defendant; (3) and the degree of judicial guidance provided for living conditions is different from that provided regarding medical care. (R& R at 17.) Further, Magistrate Judge Kuo finds that the PLRA is a special factor that counsels against the extension of *Bivens* into this new context. (*Id.* at 19.) In her qualified immunity analysis, Magistrate Judge Kuo finds that the allegations of mistreatment by Podias and Juste failed to put forth sufficient facts demonstrating objectively

5

serious injury, and the allegations with respect to the remaining plaintiffs had failed to demonstrate personal involvement on behalf of the defendants. (R&R at 33.)

**III.    Objections**

Plaintiffs object to Magistrate Judge Kuo's recommendation with respect to Count I. They argue that Magistrate Judge Kuo "prematurely concludes that Plaintiffs' medical care claims should be dismissed based on Defendants' invocation" of qualified immunity, arguing that this amounts to a heightened pleading standard. (Pls.' Obj. at 8.) Plaintiffs further object to Magistrate Judge Kuo's determination that Podias and Juste's claims were not objectively serious and that all plaintiffs had failed to demonstrate the personal involvement of any of the Defendants. (*Id*.) Plaintiffs argue that the appropriate standard for the subjective requirement in a qualified immunity analysis is deliberate indifference, which they maintain they have shown here. *(Id*. at 14.)

Plaintiffs also object that Magistrate Judge Kuo "erroneously concludes that Plaintiffs fail to state a claim for damages under *Bivens* in regard to their non-medical care claims," because the alleged deficiencies do not arise in a new *Bivens* context. (*Id.* at 8–9.) Alternatively, Plaintiffs object to the *Abbasi* factors that Magistrate Judge Kuo identifies. (*Id*.) Plaintiffs further assert that the distinction between the judicial guidance provided regarding the medical care allegations brought in *Carlson* and the instant action is not "meaningful" because the conditions of confinement can be aggregated into a constitutional violation where they are mutually reinforcing such that the result is the deprivation of an identifiable human need. (*Id*. at 27.) Plaintiffs next object to Magistrate Judge Kuo's finding that special factors counsel against the extension of *Bivens* into this context; they argue that to foreclose a *Bivens* action here would deny MDC's inmates redress for violations of their Eighth Amendment rights. (*Id.* at 9.)

6

Finally, Plaintiffs request that this Court grant them leave to amend, should any part of Count I be dismissed. (*Id*. at 24.)

Defendants object to Magistrate Judge Kuo's recommendation with respect to Count II, arguing that Crespo's claim for injunctive relief is moot because he has already been released from MDC custody. (Defs.' Obj. at 11–12.) Further, Defendants object that Magistrate Judge Kuo erred in finding that sovereign immunity did not bar Crespo's claim for injunctive relief based on violations of the Eighth Amendment. (*Id*. at 15.) Defendants maintain that the existence of alternative statutory remedies precludes Crespo's claim for injunctive relief here. (*Id*. at 15–20.) Defendants also argue that the Eighth Amendment does not provide an express waiver of sovereign immunity, and Crespo's purported bases for subject-matter jurisdiction do not confer jurisdiction. (*Id*. at 20–24.)

## STANDARD OF REVIEW

When reviewing an R&R, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party raises an objection to an R&R, the district court "shall make a *de novo* determination of those portions of the Report and Recommendation to which objection is made." 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). However, "new claims presented in the form of, or along with, objections should be dismissed. Considering new claims would undermine the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments." *Green v. City of New York*, No. 05-CV-429 (SLT) (ETB), 2010 WL 148128 at *4 (E.D.N.Y. Jan 14, 2010), *aff'd*, 403 F. App'x 626 (2d Cir. 2010) (internal citations and quotation marks omitted).

Moreover, portions to which no party has objected are reviewed for clear error. *See Morritt v. Stryker Corp.*, 973 F. Supp. 2d 177, 181 (E.D.N.Y. 2013); *Price v. City of New York*, 797 F. Supp. 2d 219, 223 (E.D.N.Y. 2011). The Court will find clear error only where, upon a review of the entire record, it is left with the definite and firm conviction that a mistake has been committed. *See* Fed. R. Civ. P. 72(a); *Regan v. Daimler Chrysler Corp.*, No. 07-CV-1112 (RRM) (JO), 2008 WL 2795470, at *1 (E.D.N.Y. July 18, 2008); *Nielsen v. New York City Dep't of Educ.*, No. 04-CV-2182 (NGG) (LB), 2007 WL 1987792, at *1 (E.D.N.Y. July 5, 2007).

## DISCUSSION

### I. Applicable Law

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### II. Count II

Concerning Crespo's claims for injunctive relief on behalf of himself and the putative class, defendants object to Magistrate Judge Kuo's determination that sovereign immunity did not bar Crespo's claim for injunctive relief. This objection is without merit. First, Defendants argue that the Eighth Amendment does not constitute a waiver of sovereign immunity. (Defs.' Obj. at 13–14.) While sovereign immunity bars suits against federal officers in their official capacities for money damages, it does not bar claims brought against federal officials in their official capacities for injunctive relief. *See Berkun v. Terrell*, No. 12-CV-706 (JG), 2012 WL

8

3233897 at *3 (E.D.N.Y. Aug. 6, 2012); *see also Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 326–27 (2015) (describing longstanding precedent giving federal courts power to "grant injunctive relief against state officers who are violating, or planning to violate, federal law… [this is true] also with respect to violations of federal law by federal officials."). Thus, whether the Eighth Amendment contains a waiver of sovereign immunity for money damages has no bearing on whether Crespo may bring his claim for injunctive relief.

Next, Defendants argue that Magistrate Judge Kuo incorrectly found a proper basis for this Court's jurisdiction. However, Crespo's claims are based on a federal question, and thus this Court may properly exercise jurisdiction under 28 U.S.C § 1331. (Am. Compl. ¶ 7.) Additionally, Crespo sues under 28 U.S.C. § 1361, requesting that an officer of the United States be compelled to perform a duty owed to the putative class, in this case not to violate their Eighth Amendment rights, situating the matter squarely within this Court's jurisdiction. (*Id.*) *See Kahane v. Carlson*, 527 F. 2d 492, 496 (2d Cir. 1975) (maintaining jurisdiction under § 1361 in an action alleging First Amendment violations in prison food services). Moreover, Magistrate Judge Kuo did not, as Defendants claim, incorrectly conflate the inherent equitable powers of the court with the basis for jurisdiction when she found that, just as in *Simmat v. United States Bureau of Prisons*, a claim for injunctive relief brought against prison officials under the Eighth Amendment may be properly within the federal courts under both 28 U.S.C. § 1331 and § 1361 and is not barred by sovereign immunity. 413 F. 3d 1225, 1240 (10th Cir. 2005).

Further, Defendants argue that Magistrate Judge Kuo erred in allowing Crespo's claim for injunctive relief to proceed where an alternate statutory remedy was available through a writ of habeas corpus. (Defs.' Obj. at 16–17.) This objection is unfounded. Defendants cite no authority to support the contention that a court should decline to exercise jurisdiction over a

9

request for injunctive relief because the plaintiff had the option to petition for a writ of habeas corpus.

Additionally, Defendants contend that Magistrate Judge Kuo erred in allowing the claims to proceed because the claims were mooted when Crespo was discharged from MDC. (Defs.' Obj. at 11.) This argument first appeared in a one-sentence footnote in Defendants' initial motion to dismiss, and therefore this Court is not required to consider it. *See Tummino v. Hamburg*, 936 F. Supp. 2d 162, 193–94 (E.D.N.Y. 2013) (Finding that it is not the Court's "job… to 'scour through footnotes in search of some possibly meritorious point that counsel did not consider of sufficient importance to develop or include as part of the argument.'") (quoting *United States v. Restrepo*, 986 F. 2d 1462, 1463 (2d. Cir. 1993)). Nevertheless, this Court concurs with Magistrate Judge Kuo's determination that Crespo's claim on behalf of the putative class is not moot because it is "capable of repetition, yet evading review." *See Amador v. Andrews*, 655 F. 3d 89, 99 (2d Cir. 2011) (holding that the relation-back doctrine "applies to the claims of the plaintiffs who have been released [from custody] and preserves their claims for adjudication for purposes of a class action…").

Finally, Defendants protest that the requested injunction is too broad, both because Crespo seeks injunctive relief on behalf of a putative class and because the types of relief sought would require Defendants to "implement changes to medical, sanitary, and living conditions" such as requiring "officers to follow health care provider instructions," requiring "adequate maintenance and cleaning of units" and weekly inspections by an exterminator, and the appointment of an independent monitor. (Defs.' Obj. at 18, citing Am. Compl.) This argument also must fail. As Magistrate Judge Kuo explained, in *Simmat*, the Tenth Circuit found that sovereign immunity did not bar injunctive relief that would require defendants to provide dental

services, rejecting the defense's argument that an injunction requiring such services would be impermissible as an affirmative action by the sovereign. 413 F. 3d at 1233. The *Simmat* court concluded that such an application of sovereign immunity "would leave prisoners without a remedy for federal prison officials' failure to carry out their constitutional duties, violating the basic principle that 'where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief . . .'" *Id.* (citing *Bell v. Hood*, 327 U.S. 678, 684 (1946)); *see also Farmer v. Brennan*, 511 U.S. 825, 846 (1994) (stating that the courts could "grant appropriate relief" on a federal prisoner's Eighth Amendment claim for damages and injunctive relief against prison officials in their individual and official capacities). Therefore, sovereign immunity does not bar the requested injunctive relief because it seeks broad remedies for alleged Constitutional violations.

### III.    Count I

#### a. Non-Medical Care *Bivens* Claims

In *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the Supreme Court made clear that the extension of an implied right of action to redress constitutional violations first articulated in *Bivens* is "now a disfavored judicial activity." (internal quotations and citations omitted.) As such, the Supreme Court has cautioned against extension of *Bivens* into any new context; because Congress is better positioned than the courts to decide when to impose new substantive liability, the Supreme Court advises judicial restraint. *Id*. at 1857.

To determine whether a *Bivens* action arises in a new context, courts must consider whether:

> the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court… Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way

11

> because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider."

*Ziglar v. Abbasi*, 137 S. Ct. at 1859–60. "[A] *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress," such as the existence of an alternative remedial scheme, the manner in which the Congress has structured its regulatory authority, the burden of a damages remedy on the Government and individual employees, or any other unforeseeable factor that would counsel restraint. *Id*. (internal quotations and citations omitted).

Concerning the *Bivens* claim of inhumane housing, lack of fresh air and sunlight, and deficient food services, plaintiffs contend Magistrate Judge Kuo erred by concluding that these claims were an extension of *Bivens* into a new context. Plaintiffs argue that the three "meaningful" differences that Magistrate Judge Kuo identified in her application of *Abbasi* –that the claims are generalized as opposed to particularized, that the officers differ in rank, and that courts provide different degrees of judicial guidance regarding conditions of confinement and medical treatment – are not supported by a fair reading of the complaint and so cannot justify dismissal of the non-medical claims. (Pls.' Obj. at 27.)

First, Plaintiffs dispute that alleged general health conditions of inmates' confinement is meaningfully distinct from the inadequate medical care presented in *Carlson v. Green*, 446 U.S. 14 (1980). The Court concurs with Magistrate Judge Kuo's reasoning that generalized conditions of confinement are non-trivially different from the failure to provide medical treatment to a particular inmate. (R&R at 16–17.) The fetid, unclean and cramped conditions of confinement Plaintiffs allege are more closely related to the claims brought in *Abbasi*, where

12

plaintiffs were held in small cells for 23 hours a day and denied access to exercise, recreation, and personal hygiene items; the Court found that these conditions of confinement claims were, in fact, an extension of *Bivens* into a new context. *See Abbasi*, 137 S. Ct. 1843. Though the claims arise from the Eighth Amendment, the same right at issue in *Carlson*, that similarity alone is insufficient to support a non-medical care claim under *Bivens*. *See Gonzalez v. Hasty*, 269 F. Supp. 3d. 45, 64 (E.D.N.Y 2017), *aff'd Gonzalez v. Hasty*, 755 F. App'x 67 (2d Cir. 2018) (holding that plaintiff's "non-medical [Eighth Amendment] claims present facts that are very different from *Carlson*, such that it is a 'new context'").

Plaintiffs counter that the alleged conditions of confinement may be aggregated into a *Carlson* violation "when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). This Court concurs with Magistrate Judge Kuo's determination that Plaintiffs have not alleged with specificity that the aggregated conditions identified by Plaintiffs deprive Plaintiffs of a single, "identifiable human need" such as the persistent sleep deprivation in *Walker*. (R&R at 19–20.) Further, the instant case is distinguishable from *Farmer v. Brennan*, 511 U.S. 825 (1994), which Plaintiffs cite as evidence that conditions of confinement can constitute Eighth Amendment violations sufficient to support a *Bivens* action. (Pls.' Mem. at 28.) In *Farmer*, the conditions of confinement were particularized; the identified plaintiff, who was a transgender woman housed in a men's prison and whose gender expression placed her at risk for sexual violence, brought a *Bivens* action alleging failure to protect her from violence inflicted by other inmates. 511 U.S. at 830–831. Plaintiffs describe no such particularized threat.

Next, Plaintiffs argue that Magistrate Judge Kuo unnecessarily speculated about a possible difference in rank between officials who control inmate medical care and those who control inmate housing and food, a difference they argue would not be "meaningful" even if it existed. (Pls.' Obj. at 26.) Under *Abbasi*, a case may differ "in a meaningful way because of the rank of the officers involved." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017). This Court agrees that the officer ranks are not clear from the record. However, this is one of three meaningful distinctions enumerated in the R&R; Plaintiffs' non-medical claims extend *Bivens* into a new context under *Abbasi* whether or not there is a difference in rank between officials who control medical care and those who control the general conditions of housing or food.

Further, Plaintiffs contest Magistrate Judge Kuo's determination that, under *Abbasi*, special factors counsel hesitation in extending a *Bivens* remedy. First, Plaintiffs argue that the alternative remedies of *habeas* relief, injunctive relief, and administrative complaints are insufficient because they do not provide "roughly similar incentives" for compliance with the Eighth Amendment "while also providing roughly similar compensation to victims of violations." (Pls.' Obj. at 28 (*quoting Minneci v. Pollard*, 565 U.S. 118, 130 (2012)).) Magistrate Judge Kuo determined, and this Court agrees, that even if Plaintiffs were correct, the PLRA is an additional special factor that counsels against recognizing a *Bivens* claim here. (R&R at 19.) Plaintiffs argue that the PLRA should not be considered a special factor since several of the named plaintiffs were no longer incarcerated, and therefore could not avail themselves of PLRA remedies. (Pls.' Obj. at 30.) That argument is not determinative where, as here, Plaintiffs controlled the timing of their suit.

Plaintiffs assert that the passage of the PLRA should not be interpreted to foreclose *Bivens* actions. (*Id*.) Though Plaintiffs are correct that Congressional silence is subject to a wide

14

array of interpretations, the "threshold for concluding that a factor counsels hesitation 'is remarkably low…'" *Turkmen v. Ashcroft*, No. 02-CV-2307 (DLI) (SMG) 2018 WL 4026734 at *9 (E.D.N.Y. Aug. 13, 2018) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009). The Supreme Court's guidance in *Abbasi* directs courts to consider in the special factor analysis whether Congress structured its regulatory authority in such a manner that it makes "it less likely that Congress would want the Judiciary to interfere." *Abbasi*, 137 S. Ct. at 1858. The PLRA suggests such a motivation, and that suggestion is enough to counsel hesitation. Accordingly, this Court concurs with Magistrate Judge Kuo's determination that the PLRA is a special factor counseling against extending *Bivens* into this new context.

### b. Medical Care *Bivens* Claims

In her R&R, Magistrate Judge Kuo determined that the denial of medical care *Bivens* claims did not extend *Bivens* into a new context but found that the claims should be dismissed on the basis of qualified immunity. Plaintiffs contend Magistrate Judge Kuo was wrong to address the question of qualified immunity at the motion to dismiss stage. Plaintiffs cite *Chamberlain v. City of White Plains*, a case decided subsequent to the filing of the R&R, to show that it is rarely appropriate to consider a qualified immunity defense on a Rule 12(b)(6) motion. 960 F.3d 100 (2d Cir. 2020). The *Chamberlain* court stated, "a qualified immunity defense presented on a Rule 12(b)(6) motion 'faces a formidable hurdle . . . and is usually not successful.'" *Id* at 111–12 (citing *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006) (internal quotation marks omitted)). The *Chamberlain* court explained,

> A defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route. Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears [that the alleged facts, if true, plausibly state a claim] that would entitle him to relief. Thus, the plaintiff is

15

>   entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.

960 F.3d at 110 (2d Cir. 2020) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citations, internal quotation marks, and alterations omitted)). However, the Court need not reach a decision on the application of qualified immunity here because Plaintiffs have failed to state a claim under *Bivens*.

Magistrate Judge Kuo separately found, and this Court agrees, that Plaintiffs failed to state a claim under *Bivens* because Plaintiffs failed to demonstrate personal involvement of the Individual Defendants. (*See* R&R at 25–26, 28, 29, 31, 33.) "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009). Plaintiffs allege that the Individual Defendants were generally aware of the conditions of confinement at MDC due to media reports and their positions of authority, and, through their supervisory powers, these defendants "created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions" at the facility. (*See* Compl. ¶¶ 16–22.) This conclusory statement is tantamount to an assertion of supervisory liability for Plaintiffs' allegedly deficient medical care and is therefore insufficient.

Plaintiffs further allege that defendants Ask-Carlson, Quay, Travers, Decker, and Comer attended "Main Line" meetings where Cadre raised complaints of deficient conditions of confinement, including deficient medical care, thus purporting to show personal involvement. However, generalized awareness of a plaintiff's dissatisfaction with conditions of confinement is not sufficient to establish personal involvement for particular wrong. *See, e.g., Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (finding no personal involvement on behalf of the Commissioner

16

of the New York Department of Correctional Services where plaintiff mailed him a letter complaining generally about his conditions of confinement but did not mention the Due Process violation alleged in his § 1983 action.)  Plaintiffs state only that "[t]hroughout the Class Period, Cadre would raise issues at Main Line concerning Cadre living conditions, deficient food and inadequate medical care, as detailed below in paragraphs 35-103." (Am. Compl. ¶ 32.)  Even if Plaintiffs had plausibly alleged that they had raised the specific incidents of deficient medical care that form the basis of their *Bivens* claims during Main Line meetings, the Amended Complaint contains no allegation that the Individual Defendants responded to these complaints with deliberate indifference.  Construing the Amended Complaint is the light most favorable to Plaintiffs, the assertion that the Individual Defendants are personally involved due to defendants Ask-Carlson, Quay, Travers, Decker, and Comer participating in Main Line meetings is not sufficient to survive a motion to dismiss.

      Finally, the Amended Complaint alleges that Crespo filed grievances the year following his alleged deficient medical care, but that Quay, Carvajal and Kane affirmed the rejection of his grievances because it was unclear and because they wrongly stated that Crespo had failed to first pursue informal resolution of his claim.  (*Id.* ¶¶ 103–07.)  That Quay, Carvajal and Kane summarily rejected Crespo's grievance is also inadequate to demonstrate the personal involvement of any of the Individual Defendants in his alleged deprivation of medical care.  *See Mateo v. Fischer*, 682 F. Supp. 2d 423, 430–31 (S.D.N.Y. 2010) (the summary denial of a prisoner's complaint is insufficient to establish personal involvement) (collecting cases).  Accordingly, Plaintiffs have not alleged personal involvement of any of the Individual Defendants and have therefore failed to state a claim under *Bivens* for deficient medical care.

### c. Leave to Re-plead

Plaintiffs seek leave to re-plead to correct the deficiencies in their *Bivens* claims. However, "[w]here it appears that granting leave to amend is unlikely to be productive… it is not an abuse of discretion to deny leave to amend." *Lucente v. International Business Machines Corp.*, 310 F. 3d 243, 258 (2d Cir. 2002) (citations omitted). Plaintiffs were given leave to file an amended complaint to cure several deficiencies in their initial filing, including a failure to allege personal involvement. (*See* Motion for pre-motion conference to address proposed Amended Complaint (Doc. No. 27) at 1 ("the proposed Amended Complaint makes even more clear that certain [d]efendants who are being sued under *Bivens* were personally involved in the alleged constitutional violations that form the basis of the relief sought by the damages class.").) This Court denies leave to amend to cure these same deficiencies, as amendment would be futile.

The Court has reviewed the remainder of Magistrate Judge Kuo's recommendations to which the parties did not object for clear error. The Court affirms and adopts the thorough and well-reasoned Report and Recommendation as the opinion of the Court.

### CONCLUSION

For the reasons set forth herein, the Report and Recommendation of Magistrate Judge Kuo is adopted in its entirety. Defendants' motion to dismiss as to Count I is granted with prejudice, and denied as to Count II. The matter is respectfully referred to Magistrate Judge Kuo for all further pre-trial proceedings.

SO ORDERED.

Dated: Brooklyn, New York
November 26, 2020

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge