UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
DAVID CRESPO, ANTHONY PODIAS,      :
PEDRO ESPADA, JR., ROLFI ESPINAL,   :
KESNEL JUSTE, and ANTHONY JOSEPH, on  :
their own behalf, and on behalf of two classes of   :      **REPORT &**
similarly situated prisoners,             :      **RECOMMENDATION**
                                    :
                       Plaintiffs,   :      17-cv-6329 (MKB)(PK)
                                    :
            -against-                :
                                    :
MICHAEL CARVAJAL, HUGH HURWITZ,    :
HERBITO TELLEZ, HERMAN QUAY III,    :
KIMBERLY ASK- CARLSON,              :
GERARD TRAVERS, WAYNE              :
DECKER, and MARY LOU COMER,         :
                                    :
                       Defendants.   :
-------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Plaintiff David Crespo ("Crespo"), a former inmate at the Metropolitan Detention Center

Brooklyn ("MDC Brooklyn"), brought this putative class action against Defendants seeking injunctive

relief and alleging that his Eighth Amendment rights, as well as those of the proposed class members,

were violated because of deficient medical care, inhumane housing conditions, lack of fresh air and

sunlight, and deficient food services. (*See* Am. Compl., Dkt. 34.)

After Crespo passed away on September 4, 2021 (Declaration of Eric Hochstadt ("Hochstadt

Decl.") ¶ 15, Dkt. 115-1), Chenshin Chan ("Chan") and David Nagy ("Nagy") (collectively, "Proposed

Intervenors") filed a Motion to Intervene on Behalf of Proposed Class and for Leave to Amend the

Operative Complaint. (The "Motion," Dkt. 112.) The Honorable Judge Margo K. Brodie has referred

the Motion to me for a report and recommendation. For the reasons below, I respectfully recommend

that the Motion be granted.

## RELEVANT BACKGROUND

Crespo and co-Plaintiffs Anthony Podias, Pedro Espada, Jr., Rolfi Espinal, Kesnel Juste, and Anthony Joseph filed a Complaint (Dkt. 1) on October 31, 2017, and an Amended Complaint on July 6, 2018. ("Am. Compl.," Dkt. 34.) At the time of the Amended Complaint, Plaintiffs were or had been minimum-security male prisoners, known as "Cadre," held at MDC Brooklyn. (Am. Compl. ¶¶ 1, 10-15.) Defendants are employees of either MDC Brooklyn or the Bureau of Prisons ("BOP"). (*Id.* ¶¶ 16-22.) The Amended Complaint includes allegations about the treatment of the Cadres related to inhumane housing conditions (*id.* ¶¶ 43-48), lack of fresh air and sunlight (*id.* ¶¶ 53-55), deficient food services (*id.* ¶¶ 58-59), and deficient medical care (*id.* ¶¶ 36-38), as well as allegations specific to each Plaintiff. Allegations specific to Plaintiff Crespo include deficient medical care related to his diabetes and an infection allegedly caused by the living conditions of MDC Brooklyn. (*Id.* ¶¶ 63-68.)

The Amended Complaint is styled as a putative class action and seeks relief for two potential classes: a Damages Class and an Injunctive Relief Class. The Damages Class claim sought damages for "any male minimum-security sentenced inmates who were incarcerated at any point between October 31, 2014 and October 31, 2017…at MDC Brooklyn." (Am Compl. ¶ 23.) The Injunctive Relief Class claim sought injunctive relief for a proposed class comprised of "any male minimum-security sentenced inmates incarcerated at MDC Brooklyn currently or in the future." (*Id.*)

Defendants filed a motion to dismiss, which the Court granted in part and denied in part on November 30, 2020. (*See Crespo v. Hurwitz*, No. 17-CV-6329 (RRM)(PK), 2020 WL 7249591, at *23 (E.D.N.Y. May 17, 2020), *report and recommendation adopted*, 2020 WL 7021658 (E.D.N.Y. Nov. 30, 2020).) The Damages Class claim was dismissed, but the Injunctive Relief Class claim was permitted to proceed.[1] Crespo was the sole Plaintiff with regard to the Injunctive Relief Class.

---

[1] Plaintiffs' motion for Rule 54(b) certification and entry of final judgment to permit appeal of the decision on the Damages Class claim was denied on September 14, 2021. (Dkt. 86.)

Defendants filed an Answer on January 6, 2021 (Dkt. 69) and the parties filed a joint proposed scheduling order on February 3, 2021.  (Dkt. 70.)

On October 6, 2021, the parties informed the Court that Crespo had passed away.  (Status Report, Dkt. 87; *see* Suggestion of Death, Dkt. 89.)  On December 3, 2021, Plaintiffs filed a Motion for Leave to Allow Absentee Injunctive Relief Class Member(s) to File a Motion to Intervene.  (Dkt. 92.)  The Court granted Plaintiffs' request and, because the information was not otherwise available, directed Defendants to produce to Plaintiffs a list of all Cadres incarcerated at that time by the BOP at MDC Brooklyn.  (Minute Order dated May 24, 2022.)  Plaintiffs' counsel thereafter sent a letter reaching out to each listed Cadre and conducted calls with those that responded.  (Motion for Extension of Time to File Motion to Intervene at 1, Dkt. 111.)  Plaintiffs' counsel sought and were granted an extension of time to file the Motion because malfunctioning video call equipment and delays during in-person visits "interrupted Plaintiffs' Counsel's contact with Cadre."  (*Id.* at 2.)

On September 22, 2022, Proposed Intervenors filed the Motion, seeking leave to intervene and to file the Proposed Second Amended Complaint.  (Motion at 2.)  Proposed Intervenors, like Crespo, were or are Cadres at MDC Brooklyn.  (*Id.*)  Chan has been held at MDC Brooklyn since approximately December 20, 2021 and is expected to be released by December 16, 2025.  (Proposed Second Amended Complaint ("Proposed Second Am. Compl."), Ex. A to the Motion ¶ 12, Dkt. 112-1.)  He makes individual allegations about deficiencies in medical treatment related to a COVID-19 infection in January to February 2021, which resulted in lasting lung damage, as well as deficiencies in treatment for his chronic tinnitus and hypercholesterolemia.  (Proposed Second Am. Compl. ¶¶ 112-21.)  Chan also alleges that during his incarceration he has only been outdoors on two occasions, once when sent to an outside hospital and once to throw away trash in a dumpster outside the MDC Brooklyn facility.  (*Id.* ¶ 124.)  Nagy was incarcerated at MDC Brooklyn on January 20, 2022, and, at the time the Proposed Second Amended Complaint was drafted, was expected to be released by

September 23, 2022.  (*Id.* ¶ 13.)  He alleges that he suffered deficiencies in medical treatment related to ongoing care required for nerve damage from a stroke suffered prior to his incarceration, was coerced into working in unsafe conditions under threat of solitary confinement, and that he has not been allowed outside during his incarceration.  (*Id.* ¶¶ 128-36.)

The proposed amendments substitute Proposed Intervenors as named plaintiffs, add the individual allegations of the Proposed Intervenors, add and remove Defendants in order to accurately identify current BOP and MDC Brooklyn personnel, and remove the dismissed Damages Class claim and allegations.  (*See* Proposed Second Am. Compl.)  The Proposed Second Amended Complaint maintains allegations of deficient medical care (Proposed Second Am. Compl. ¶¶ 32-53), inhumane housing conditions (*Id.* ¶¶ 54-66), and deficient food services (*Id.* ¶¶ 67-71), but not lack of fresh air and sunlight.  It contains new information about these categories of allegations, such as information about MDC Brooklyn's handling of COVID-19 (*Id.* ¶¶ 43, 48-51), the conditions in the open-plan dormitory where Cadres are now housed (*Id.* ¶¶ 59-62), and a power outage at MDC Brooklyn in January 2019 (*Id.* ¶ 5).

Oral argument on the Motion was held on February 10, 2023.  (Minute Entry dated Feb. 11, 2023.)  The Motion was referred to the undersigned for a report and recommendation on February 15, 2023.

## DISCUSSION

### I.    Motion to Intervene

Proposed Intervenors seek to intervene as of right or, in the alternative, seek permissive intervention.  (Motion at 3-9.)

Defendants argue that Crespo's death renders the case moot, and as a result there is no live controversy in which to intervene.  (Def. Resp. at 11-12.)  If the Court finds that the case is not moot, Defendants oppose intervention on both grounds.  (*Id.* at 13-19.)

### A. *Mootness*

#### 1. **Legal Standard**

Generally, a class action is rendered moot if there is no longer a named plaintiff with a live controversy and, therefore, standing. *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975); *Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011) ("Of course, a class action cannot be sustained without a named plaintiff who has standing.").

However, if a class has been certified, that class "acquires a legal status separate from the interest asserted by the named plaintiff," thus providing a "lifeboat" for a claim that would otherwise be mooted. *Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60, 63 (E.D.N.Y. 2005) (citing *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994); *Weiss v. Regal Collections*, 385 F.3d 337, 342 (3d Cir. 2004), *as amended* (Oct. 22, 2004), *and abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)). Applying the rationale that the class certification "relates back" to the filing of the complaint, courts have also held that filing a motion for class certification preserves the controversy, even if the class has not yet been certified. *Eckert*, 227 F.R.D. at 63 (citing *Swan v. Stoneman*, 635 F.2d 97, 100-102 (2d Cir. 1980)). Finally, courts have held that even when a motion for class certification has not yet been filed, the matter is not rendered moot and the court retains subject matter jurisdiction if the plaintiff "has not yet had a reasonable opportunity to file a motion for class certification, namely, where there has been no 'undue delay'…." *Eckert*, 227 F.R.D. at 63.

#### 2. **Discussion**

Crespo passed away before class certification was sought. The question is, thus, whether he had a reasonable opportunity to move for certification and whether he unduly delayed in doing so. I find that he did not.

Shortly after Defendants filed an Answer, the parties jointly submitted a Proposed Discovery Plan/Scheduling Order, in which they agreed that all fact discovery would be completed "60 days after the completion of ESI [electronically stored information] production," that all discovery, including expert discovery, would be completed "75 days after the close of fact discovery," and that any motion for class certification would be filed "21 days after the close of all discovery". ("Proposed Scheduling Order" at C3, C6, E2, Dkt. 70.)  At the initial conference, the Court deferred entering a scheduling order, pending resolution of a dispute with regard to production of ESI.  After the parties resolved the dispute approximately a month and a half later (*see* Plaintiffs' Letter dated Mar. 24, 2021, Dkt. 79), no request was made to enter the proposed scheduling order, but the parties proceeded with discovery, in apparent conformity with their joint plan.

Defendants made their first production of ESI materials on August 25, 2021.  (Hochstadt Decl. ¶ 17.)  Two weeks later, Crespo passed away.

Because discovery was in its early stages and the parties had agreed that any motion for class certification would follow the completion of all discovery, Crespo did not have a reasonable opportunity to file a motion for class certification before he died.  Moreover, Proposed Intervenors contend, and Defendants do not dispute[2], that before Crespo's death, Defendants had not produced "the basic class-wide discovery necessary to support a motion for class certification, such as the Class' size, composition, and conditions of confinement."  (Pl. Reply at 2, Dkt. 115.)

Accordingly, I find that the proposed Injunctive Relief Class claim is not rendered moot by Crespo's death.

---

[2] Defendants assert that that Plaintiffs have had "ample time" to move for class certification, but do not dispute the discovery timeline described by Plaintiffs.  (Def. Resp. at 12.)

### B. *Intervention*

#### 1. **Legal Standard**

Federal Rule of Civil Procedure 24 governs the requirements for a motion to intervene. Rule 24 provides for intervention as of right and permissive intervention. Fed. R. Civ. P. 24(a).

Rule 24(a) sets forth the requirements for intervention as of right. It states, in pertinent part:

> (a) Intervention of right. On timely motion, the court must permit anyone to intervene who:
>
> …
>> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent the interest.

To establish a right to intervene under Rule 24(a)(2), the intervenor must establish that "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *XL Specialty Ins. Co. v. Lakian*, 632 F. App'x 667, 669 (2d Cir. 2015) (quoting *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006)). A cognizable interest is one that is "direct, substantial, and legally protectable." *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (quoting *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). "Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application." *Farmland Dairies v. Comm'r of New York State Dep't of Agric. & Markets*, 847 F.2d 1038, 1043 (2d Cir. 1988).

Rule 24(b) governs permissive intervention. It states, in pertinent part:

> (b) Permissive intervention.
>> (1) In General. On timely motion, the court may permit anyone to intervene who:
>>
>> …
>>> (B) has a claim or defense that shares with the main action a common question of law or fact.

…
(3) Delay or prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Undue delay or prejudice to the original parties' rights is "[t]he principal guide in deciding whether to grant permissive intervention." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) (citation omitted). "Additional relevant factors include the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Citizens Against Casino Gambling in Erie Cnty. v. Hogen*, 417 F. App'x 49, 50 (2d Cir. 2011) (quoting *H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)).

In assessing timeliness, which is required for both forms of intervention, courts consider "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *Penn-Star Ins. Co. v. McElhatton*, 818 F. App'x 67, 70 (2d Cir. 2020) (quoting *Floyd v. City of New York*, 770 F.3d 1051, 1058 (2d Cir. 2014)).

## 2.   **Discussion**

### a.  *Intervention as of Right*

Defendants do not contest the timeliness of the Motion.  (Def. Resp. at 13 n.5.)

Defendants argue that Proposed Intervenors do not have an interest in the subject of the litigation because any protectable interest held by Proposed Intervenors is so remote from the current claims as to "create a whole new suit." (Def. Resp. at 14 (quoting *Washington Elec. Co-op.,* 922 F.2d at 97).)  They contend that Proposed Intervenors make "wholly new" allegations related to a power outage in 2019, the COVID-19 pandemic and subsequent implementation of the CARES Act, and

Defendants' motivation to provide deficient medical care in order to preserve their available labor force. (*Id.* at 15.)

While Proposed Intervenors' specific factual allegations are new—many describing events that occurred after the Amended Complaint was filed—they all relate to the same matters that were the subject of the existing action, that is, ongoing deficiencies in medical care, inhumane housing conditions, and deficient food services for Cadres at MDC Brooklyn. Proposed Intervenors seek the same injunctive relief and qualify as members of the proposed Injunctive Relief Class, which includes "any male minimum-security sentenced inmates incarcerated at MDC Brooklyn currently or in the future…under substantially similar deplorable and unconstitutionally deficient living conditions caused by the Defendants." (Am. Compl. ¶¶ 23, 25.) They, therefore, have an interest relating to the subject of the existing action and meet the second requirement for intervention as of right.

Disposition of the action may, also, as a practical matter, impair or impede the Proposed Intervenors' ability to protect their interests. Unless an absent class member is permitted to intervene and become a named plaintiff in Crespo's place, the disposition of the case is likely to be dismissal due to lack of prosecution. (*See* Motion at 5.)

Defendants argue that Proposed Intervenors would not be prejudiced by dismissal of this action because they could still file a separate action to protect their interests. In support, Defendants cite to *In re Holocaust Victim Assets Litigation*, in which the court denied a motion to intervene as of right because the proposed intervenors had the ability to file a separate action, and, therefore, would not be prejudiced. 225 F.3d 191, 199 (2d Cir. 2000) (citations and quotations omitted). In *In re Holocaust Victim Assets Litigation*, on the final day to file objections to a settlement that had been negotiated on behalf of a class of "Victims or Targets of Nazi Persecution," an organization representing "ethnic Poles" sought to intervene. 225 F.3d at 193-95. The Swiss bank defendants argued that the proposed intervenor would not be impaired or impeded if its application were denied because it could file an

9

independent lawsuit. *Id.* The court agreed with the defendants, finding that obstacles to a new lawsuit, such as a lengthy litigation, "duplicating the efforts of existing plaintiffs," and the fact that defendants might face less public pressure to settle favorably with the proposed intervenor did not impair or impede the proposed intervenor's ability to protect its interest such that intervention as of right was warranted. *Id.*

Here, disposition of this case through dismissal would impede or impair the ability of Proposed Intervenors to protect their interest, notwithstanding their ability to file a new lawsuit. Because Proposed Intervenors seek injunctive relief from ongoing constitutional violations, any delay caused by the additional efforts required to commence a new action extends the time that Proposed Intervenors and putative class members will suffer alleged inhumane housing conditions, deficient medical care, and other violations of their Eighth Amendment rights.

Moreover, Plaintiffs have successfully defended against Defendants' motion to dismiss the Injunctive Relief Class claim on sovereign immunity grounds in this case. A new action will most likely prompt a new motion to dismiss. The motion to dismiss in the existing case was vigorously contested by the parties and raised an issue on which "[t]he Second Circuit has not provided guidance…whether sovereign immunity bars a claim based on the Eighth Amendment for injunctive relief against federal prison officers in their official capacity." *Crespo v. Hurwitz*, 2020 WL 7249591 at *20. Any new motion to dismiss, whether on new or similar grounds, will require the parties to expend significant additional time and effort to brief and argue. Importantly, this Court's decision in favor of Plaintiffs will no longer be the law of the case. The risk that a different court would dismiss a new action, rather than be bound by this Court's decision, would, as a practical matter, impair Proposed Intervenors' ability to protect their interest.

Therefore, Proposed Intervenors have met the third requirement for intervention as of right.

Finally, Proposed Intervenors easily meet the fourth requirement for intervention as of right

10

by showing that the current representation is inadequate. The proposed Injunctive Relief Class has not had any representation since the death of Crespo, its only named plaintiff. (Motion at 6.) "The burden of showing that the [p]roposed [i]ntervenors' interests are not adequately protected by an existing party is 'minimal.'" *Eddystone Rail Co., LLC v. Jamex Transfer Servs.*, LLC, 289 F. Supp. 3d 582, 592 (S.D.N.Y. 2018) (quoting *CBS Inc. v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991)). Proposed Intervenors' interests cannot be adequately represented by a named plaintiff who has passed away. *Guadagna v. Zucker*, No. CV-17-3397 (JMA) (AKT), 2021 WL 4150802, at *6 (E.D.N.Y. July 9, 2021), *report and recommendation adopted*, No. 17-CV-03397 (JMA) (AKT), 2021 WL 4147420 (E.D.N.Y. Sept. 13, 2021).

Thus, Proposed Intervenors have satisfied each of the four requirements for intervention as of right. Accordingly, I respectfully recommend that the Court find that Proposed Intervenors are entitled to intervention as of right under Rule 24(a).

### b. *Permissive Intervention*

Alternatively, I also find that Proposed Intervenors are entitled to permissive intervention.

The Motion is timely, and Proposed Intervenors share a common question of law or fact with the existing action by asserting the same claims, seeking the same relief, and belonging to the same proposed Injunctive Relief Class.

Defendants oppose permissive intervention on the basis that the intervention would prejudice them. They contend that the additional allegations of Proposed Intervenors relate to conditions and events that occurred after the filing of the Amended Complaint and would "markedly complicate the issues presented and, consequently, would unfairly prejudice Defendants." (Def. Resp. at 18.)

As Defendants argued in their opposition to intervention as of right, however, Proposed Intervenors could, as an alternative to intervention, file a new complaint to protect their interests. Given the two alternatives, it is not apparent that defending Proposed Intervenors' allegations in this

action—as opposed to a new lawsuit—would unfairly prejudice Defendants. *See Turkmen v. Ashcroft*, No. 02-CV-2307 (JG)(SMG), 2010 WL 3398965, at *5 (E.D.N.Y. June 30, 2010), *report and recommendation adopted*, No. 02-CV-2307 (JG)(SMG), 2010 WL 3398968 (E.D.N.Y. Aug. 26, 2010) (granting permissive intervention and finding that prejudice to plaintiffs would be "considerable, but not overwhelming" and any prejudice to defendants was "not particularly substantial" where "proposed intervenors could, and presumably would, file a new action asserting the same claims.").

For the foregoing reasons, I respectfully recommend that the Court exercise its discretion and permit Proposed Intervenors to intervene under Rule 24(b).

## II.      Leave to Amend the Complaint

Proposed Intervenors seek leave to file a Second Amended Complaint. They argue that justice requires amendment because after the death of the sole named plaintiff in the proposed Injunctive Relief Class, only intervention by another class member can properly continue the action. (Motion at 10-11.) Defendants contend that leave to amend should be denied because amendment would cause Defendants undue prejudice. (Def. Resp. at 19; Motion at 11-13.)

### A. *Legal Standard*

Requests to amend the complaint are generally governed by Rule 15 of the Federal Rules of Civil Procedure, which provides that once the period to amend as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 states that "the court should freely give leave when justice so requires." *Id.*; *see, e.g.*, *Pinyuk v. CBE Grp., Inc.*, No. 17-CV-5753 (RRM) (CLP), 2019 WL 1900985, at *2 (E.D.N.Y. Apr. 29, 2019) ("Rule 15 expresses a strong presumption in favor of allowing amendment"). Leave to amend may be denied only "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Pinyuk*, 2019 WL 1900985 at *2 (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). The opposing party bears the

burden of showing good reason to deny amendment. *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). The determination of whether to grant or deny leave to amend "is within the sound discretion of the district court." *McCarthy*, 482 F.3d at 200.

In considering undue prejudice, courts must consider, "among other factors, whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" *Ruotolo v. City of New York*, 514 F.3d 184, 192) (2d Cir. 2008) (quoting *Block v. First Blood Assocs.*, 988 F.2d at 350). "Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" *Id.* (citing *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)) (alteration in original).

### B.  Discussion

Defendants argue that "the new allegations…go far beyond general conditions" and as a result, "Defendants will be forced to litigate issues that did not exist when the Complaint was filed and, in the case of the global pandemic, could not have been predicted." (Def. Resp. at 19.) They contend that the proposed amendments "would recast this long-pending litigation and inject novel factual allegations and legal theories into this action," thus prejudicing Defendants. (*Id.*)

As discussed *infra*, the additional allegations in the Proposed Second Amended Complaint relate to already pled violations of constitutional rights arising from deficient medical care, inhumane housing conditions, and deficient food services at MDC Brooklyn. Because the violations were alleged to be ongoing, conditions experienced by Proposed Intervenors would likely have been brought to light and litigated as part of the case, even absent the amendments. As newly named plaintiffs, Proposed Intervenors will be pursuing the same injunctive relief as that sought by Crespo. Thus, permitting the proposed amendments to the Amended Complaint would not unduly prejudice Defendants.

13

For the foregoing reasons, I respectfully recommend granting the motion to file the Proposed Second Amended Complaint.

## CONCLUSION

Based on the foregoing, I respectfully recommend that the Motion be granted. I respectfully recommend that Proposed Intervenors be permitted to intervene, and that leave to file the Proposed Second Amended Complaint be granted.

Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          March 9, 2023